Claudia HALLIDAY, Birmingham Trust National Bank, Executor of Estate of William T. Halliday, Jr., Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 80–7882.

United States Court of Appeals, Fifth Circuit. Unit B

Sept. 4, 1981. Rehearing and Rehearing En Banc Denied Oct. 7, 1981.

---

M. Carr Ferguson, James A. Riedy, Ann Belanger Durney, Dept. of Justice, Washington, D. C., for defendant-appellant.

James E. Roberts, Wheeler, Christian & Roberts, Daniel H. Markstein, III, Markstein & Morris, Birmingham, Ala., for plaintiffs-appellees.

Before FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges, and SCOTT *, District Judge.

FRANK M. JOHNSON, Jr., Circuit Judge:

Taxpayers Claudia Halliday and Birmingham Trust National Bank, the Executor of the Estate of William T. Halliday, Jr., brought suit seeking a refund for the alleged overpayment of federal income taxes. The district court held that certain commissions on insurance renewal premiums did not constitute "income in respect of a decedent" within the meaning of Section 691 of the Internal Revenue Code of 1954. In-

stead, the commissions were characterized by the district court as proceeds from the sale of a capital asset. Because the lower court applied the incorrect standard for determining "income in respect of a decedent," we reverse.

The decedent, Mr. Halliday, was the proprietor of a Birmingham insurance agency which sold insurance primarily for Mutual of Omaha (Mutual) and United Benefit Life Insurance Company (United), a subsidiary of Mutual. The decedent executed a separate contract with each insurance company specifying, among other things, the terms of compensation for selling the policies. The contracts provided for remuneration in the form of a percentage of all initial premiums. In addition, United agreed to pay the decedent a percentage of subsequent renewal premiums. However, neither contract contained any references to the payment of post-termination or post-death benefits.

Despite the absence of an express provision in the contract, Mutual had a long-standing policy of paying post-death benefits to beneficiaries named by its agents. The policy was embodied into a 1949 corporate resolution authorizing Mutual's officers to negotiate contracts whereby an agent could name a successor in the event of death or permanent disability and, absent such a designation, receive benefits under Mutual's "three-fives" plan. The three-fives plan provided for the payment of not more than five percent of all renewal premiums in effect at an agent's death to a named beneficiary over a period of three years. A subsequent resolution adopted by Mutual in 1957 made clear that an agent could receive benefits under that plan even though the provision was absent from the contract.

Shortly after the decedent's death in 1970, Mutual and United assumed control of the agency. The insurance companies and taxpayers negotiated an agreement settling all affairs between the parties. The executor agreed to "sell, assign, transfer and

---

* District Judge of the Middle District of Florida, sitting by designation.

deliver" the assets of the agency, including insurance expirations and "any other rights pertaining to said insurance business" to the insurance companies. The agreement originally listed . goodwill as one of the agency's assets but the term was deleted at Mutual's request. In addition to transferring assets, the executors released the companies from all claims. In return, Mutual agreed to pay $7,999.44 as consideration for the agency's furniture and fixtures and to pay benefits to the estate under the three-fives plan. The agreement also provided that Mrs. Halliday was to receive a lump sum payment representing the renewal commissions owed the decedent at the time of death by virtue of the contract with United.

The benefits paid to the estate under the three-fives plan totalled over $300,000. The estate declared the amount as "income in respect of a decedent" on its fiduciary tax returns. Distributions of $20,176.55 in 1972 and $42,253.83 in 1973 were made by the estate to Mrs. Halliday. Mrs. Halliday reported the payments as income on her tax returns while the estate received a deduction for the estate tax attributable to the income distributed in accordance with Section 691(c).

Taxpayers ultimately filed suit claiming refunds for taxes paid in the years 1971 through 1974. They claimed that the renewal commissions obtained pursuant to Mutual's three-fives plan were paid as consideration for the assets of the insurance agency and did not, therefore, constitute "income in respect of a decedent." Since the agency received a stepped-up basis at decedent's death under Section 1014(a)(1) of the Internal Revenue Code of 1954, the taxpayers apparently claimed that the sale resulted in no taxable gain.

The district court determined that the claim for refund for the year 1971 was barred by the statute of limitations but granted the refund for the years 1972–74. Relying upon *Trust Company of Georgia v. Ross*, 392 F.2d 694 (5th Cir. 1967), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968), the district court stated that "income in respect of a decedent" only encompassed income that a decedent had a legal right to receive. Since the contract between Mutual and the decedent contained no references to post-death benefits, the court concluded that the insurance company was under no legal obligation to pay the renewal commissions. As a result, the payments did not qualify as "income in respect of a decedent" and were instead treated as proceeds from the sale of the insurance agency. On appeal, the Government challenges the lower court's decision that the renewal commissions are not income under Section 691.

Section 691(a) provides that gross income of an estate shall include all "income in respect of a decedent."[1] The phrase is not

1. 26 U.S.C.A. § 691. The section provides, in part:

(a) Inclusion in gross income.—
(1) General Rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:
(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

\* \* \* \* \* \*

(c) Deduction for estate tax.—
(1) Allowance of deduction.—
(A) General rule.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such

defined in the statute. However, this deficiency is assuaged somewhat by the regulations. Treas.Reg. 26 C.F.R. § 1.691(a)–1(b) states in pertinent part:

General definition. In general, the term "income in respect of a decedent" refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent.

Thus, any income that a decedent is entitled to receive must be included in the estate's gross income. The Code and concomitant regulations do not expressly require that the decedent have a legally enforceable right to the income.

The definition of the phrase was discussed in *Trust Company of Georgia v. Ross, supra*, 392 F.2d 694. In that case the decedent executed a contract for sale of land although the actual conveyance of the property did not occur until after the decedent's death. The Court deemed the proceeds from the sale to be "income in respect of a decedent." In arriving at that conclusion, the *Trust Company of Georgia* Court rejected the notion that income under Section 691 depended upon the economic efforts and activities of the decedent and instead determined that the proper test was whether the decedent had a right to the income.

Although it is pertinent to inquire whether the income received after death was attributable to activities and economic efforts of the decedent in his lifetime, these activities and efforts must give rise to a right to that income. And the right is to be distinguished from the activity which creates the right. Absent such a right, no matter how great the activities or efforts, there would be no taxable income under § 691.

392 F.2d at 695. The focus of analysis, therefore, is upon the presence or absence of a right to income at the time of the decedent's death. *Accord, Miller v. United States*, 389 F.2d 656 (5th Cir. 1968); *Keck v. Comm.*, 415 F.2d 531 (6th Cir. 1969).

The right to income test may not be a paragon of clarity. However, unlike the district court, we do not read the test to require that a decedent have a legally enforceable right to income in order for it to be taxable under Section 691. While this precise question was not at issue in *Trust Company of Georgia*, the Court did cite and discuss case law that rejected such a narrow interpretation.[2] Significantly, that decision did not repudiate the rationale of those cases; instead the Court simply promulgated a "more precise" definition of "income in respect of a decedent." Had the *Trust Company of Georgia* Court intended to adopt the restrictive definition that the right to income must be legally enforceable, it presumably would have done so in a clear and specific manner. Further, acceptance of the district court's interpretation would unnecessarily restrict the scope of Section 691. Such an interpretation would permit parties to avoid taxation simply by failing to embody obligations incurred by reason of decedent's services into a binding contract even in situations where benefits were otherwise paid to discharge these obligations. We cannot sanction, nor do we read *Trust Company of Georgia* as sanctioning, such a broad circumvention of Section 691.

person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

(B) Estates and trusts.—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a)(1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year. This subparagraph shall apply to the same taxable years, and to the same extent, as is provided in section 683.

2. The Court cited *O'Daniel's Estate v. Comm.*, 173 F.2d 966 (2nd Cir. 1949) and *Riegelman's Estate v. Comm.*, 253 F.2d 315 (2nd Cir. 1958). In both cases, the Courts acknowledged that the right to income need not be legally enforceable.

Our determination that the right to income need not be legally enforceable concurs with decisions in other jurisdictions. *O'Daniel's Estate v. Comm.*, 173 F.2d 966, 968 (2nd Cir. 1949) (A decision under the predecessor to Section 691, where the court noted that income in respect of a decedent "is not necessarily a legally enforceable right but merely any right derived through [the decedent's] services rendered while living"); *Comm. v. Linde*, 213 F.2d 1, 3 (9th Cir. 1954) (citing with approval proposition that right to income need not be legally enforceable). *See also Estate of Harry B. Sidles*, 65 T.C. 873, 881 n.6 (1976) (noting that courts have held "that the requisite right [to income under Section 691] need not be a legally enforceable one").

■ We conclude, therefore, that the district court erred in requiring that the right to income be legally enforceable. We find that for purposes of Section 691, a right to income arises where the evidence shows a substantial certainty that benefits directly related to the decedent's past economic activities will be paid to his heirs or estate upon his death, notwithstanding the absence of a legally enforceable obligation. This is a finding of fact to be made by the district court.

Having determined the proper standard, we turn to the facts of the instant case. A review of the record shows that the decedent had a sufficiently certain right to receive death benefits under Mutual's three-fives plan. Mutual had a longstanding policy of paying benefits to the estate of a deceased agent, the specificities of which were articulated in a 1949 corporate resolution. A subsequent resolution in 1957 made it clear that the benefits could be paid to agents even absent a contractual provision so requiring. The agreement negotiated between the taxpayers and insurance companies comported with Mutual's policy of paying post-death benefits. The agreement affirmed that the renewal commissions were paid as a result of Mutual's obligations under resolutions adopted by the company.[3] Mr. Muchemore, Vice-President and counsel for Mutual, testified in his deposition that the company paid the post-death benefits to other agents notwithstanding the absence of an express contractual provision. Further, nothing in the record indicates that Mutual ever failed to implement the three-fives plan upon the death of an agent.

■ The provisions of the 1949 and 1957 resolutions, coupled with the company's policy of paying benefits even absent a contractual obligation, compel the conclusion that the decedent had a right, albeit not necessarily a legally enforceable one, to the renewal commissions.[4] Accordingly the payments constitute "income in respect of a decedent" under Section 691. We also note that the renewal commissions are not taxable as gain from the sale of a capital asset. A plain reading of the agreement indicates that the renewal commissions were paid pursuant to the company resolutions and not as consideration for agency assets.[5]

3. The agreement stated that the taxpayers "have certain terminal rights under contracts between the insurance companies and William Thomas Halliday, Jr., deceased, and resolutions of the Board of Directors of Mutual of Omaha." Mr. Muchemore stated in his deposition that "terminal rights" refers to the post-death benefits articulated in the 1949 resolution. Thus the agreement provides that the payment of post-death benefits under the three-fives plan is a result of Mutual's obligations under the company resolutions.

4. It is not at all clear in this case that the obligation of Mutual under the "three-fives" plan was not "legally enforceable." The longstanding policy of Mutual of paying these benefits and the recognition of this policy in the 1949 and 1957 corporate resolutions make this a very close question.

5. The taxpayers argue that the renewal commissions were paid in return for insurance expirations held by the agency. The Government disputes this contention, claiming that the taxpayers had no property rights in the expirations. Because we have determined that the commissions were paid pursuant to a longstanding policy of Mutual, and formally evidenced by the resolutions, and not as consideration for the sale of the agency, we need not determine whether taxpayers in fact had a salable property interest in the expirations.

For the reasons stated herein, the judgments for taxpayers are hereby REVERSED.