**EDWARD D. ROLLERT RESIDUARY TRUST, GENESEE MERCHANTS BANK AND TRUST COMPANY, Trustee, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 83–1613.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1984.

Decided Jan. 16, 1985.

Webb F. Martin, Russell E. Bowers (Lead Counsel), Flint, Mich., Richard B. Covey, argued, New York City, for petitioner-appellant.

Fred T. Goldberg, Jr., Chief Counsel, Joel Gerber, Acting Chief Counsel, Internal Revenue Service, Glenn L. Archer, Jr. (Lead Counsel), Michael L. Paup, Tax Division, Dept. of Justice, Robert A. Bernstein, Robert S. Pomerance, argued, Washington, D.C., for respondent-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Petitioner-Appellant, Edward D. Rollert Residuary Trust, Genesee Merchants Bank and Trust Company, Trustee, (Taxpayer), appeals from a judgment of the Tax Court determining deficiencies in Taxpayer's income tax for the years 1973, 1974 and 1975. This case presents a question of first impression in the Tax Court and in this circuit concerning the applicability and interaction of section 691 and sections 661 and 662 of the Internal Revenue Code of 1954 (26 U.S.C.). For the reasons hereinafter stated, we affirm the judgment of the Tax Court.

## I.

The facts of this case are undisputed, having been established by stipulation. While we summarize the facts here, a more thorough statement of the case may be found in the opinion of the Tax Court, *Rollert Residuary Trust v. Commissioner*, 80 T.C. 619 (1983). Edward D. Rollert (decedent) was an executive vice-president of General Motors Corporation (G.M.) at the time of his death on November 27, 1969. For several years prior to his death, he had participated in G.M.'s bonus plan under which executive officers were awarded bonuses by G.M.'s Bonus and Salary Committee. G.M.'s practice was to determine bonuses in January for the previous year. Bonuses in excess of $2,000 were divided into installments, to be paid annually over the next several years. While the Committee had discretion to determine the recipients and the amounts of the bonuses, the decedent was, in fact, awarded a bonus for every year he was eligible. This was consistent with the Committee's general practice to award bonuses to all executive vice-presidents.

On March 2, 1970, three months after decedent's death, the Committee awarded its bonuses for 1969. Prior to his death, the Committee had made a tentative decision to award bonuses to every executive vice-president, including decedent. However, at the time of his death, the parties are in agreement that decedent had no rights to the 1969 bonus. When the 1969 bonuses were announced, the decedent was awarded a bonus consisting of 1786 shares of G.M. stock and $285,763 in cash (the post-mortem bonus). Since this bonus was in excess of $2,000, it was scheduled to be paid in several annual installments beginning in 1973.

About ten years prior to his death, decedent had established a revocable trust. Under the terms of his will, the residue of his estate was to pour over to the trust. Accordingly, the right to receive the post-mortem bonus was transferred from the estate to the trust. As each bonus installment became due, G.M. made payment to the trustee, as decedent's designated beneficiary.

On its income tax returns for the years 1970 through 1973, Taxpayer reported these bonus rights as income and valuated them at their present value at the time of distribution. When G.M. paid the installments, in January 1973, January 1974 and January 1975, Taxpayer did not claim the installments as income, except to the extent

that their actual value exceeded the value originally claimed by appellant. The estate, meanwhile, claimed a deduction equal to the fair market value of each distribution of bonus rights made to the trustee. This deduction was made pursuant to 26 U.S.C. § 661(a)(2), which allows estates to deduct "amounts properly paid or credited or required to be distributed." The estate did not declare any income when G.M. distributed the actual bonuses.

After an audit, the Commissioner determined deficiencies in Taxpayer's reported income for the 1973–75 period. The Commissioner claimed that, pursuant to 26 U.S.C. § 691, each bonus installment received was income in respect of a decedent and had to be included in full in Taxpayer's income for the year in which it was received. Taxpayer should not have declared the bonus rights as income, only the actual bonuses, the Commissioner concluded.

Taxpayer petitioned the Tax Court for a redetermination of the deficiencies. The Tax Court held that, while decedent did not have a legal right to receive the post-mortem bonus at the time of his death, he nonetheless had a "right" to the bonus, within the meaning of § 691, because it was substantially certain, as of the date of his death, that he would receive the bonus. Consequently, the court ruled, the bonus installments constituted income in respect of a decedent, pursuant to § 691. The court also held that §§ 661 and 662 do not apply to the distribution of the bonus rights because this would defeat the purpose underlying § 691 and because, in any event, the more specific provisions of § 691 control over the general provisions of §§ 661 and 662. As a result, the court upheld the Commissioner's assessed deficiencies against Taxpayer who has appealed to this court.

## II.

Taxpayer has attacked the Tax Court's opinion on two fronts. First, Taxpayer argues that the post-mortem bonus was not "income in respect of a decedent", within the meaning of section 691, because dece-

dent did not have a legally enforceable right, at the time of his death, to receive this bonus. The statute's use of the phrase "in respect of a decedent" contemplates a legal right, Taxpayer urges, not simply a substantial likelihood, as the Commissioner and the Tax Court contend. Second, Taxpayer insists that the bonuses should properly be characterized as "amounts properly paid", within the meaning of §§ 661(a)(2) and 662(a)(2), and that, pursuant to Treas. Reg. § 1.661(a)–2(f), Taxpayer can treat the distribution of the *right to receive* the postmortem as income to itself at the time of the distribution.

The Commissioner rejects these arguments. With regard to Taxpayer's first contention, the Commissioner insists that § 691's use of the phrase "in respect of the decedent" does not indicate that the decedent must have had a legally enforceable right to receive the property. Rather, the Commissioner contends, property is "in respect of the decedent" as long as there is a substantial certainty that he will receive it. In the instant case, the Commissioner argues that there was substantial certainty, at the time of his death, that decedent would receive the bonus. Therefore, the Commissioner contends, the bonus constitutes income "in respect of the decedent", within the meaning of § 691, and must be reported when received, not when the rights to the bonus payment are distributed. With regard to Taxpayer's contention that §§ 661 and 662 govern this transaction, the Commissioner agrees that, in the absence of § 691, §§ 661 and 662 would indeed govern this transaction. The Commissioner notes that § 691 specifically relates to income in respect of a decedent while §§ 661 and 662 apply to the more general situation of property distributed by an estate. Since § 691 specifically covers this transaction while §§ 661 and 662 apply in a more general way, § 691 should take precedence over §§ 661 and 662, the Commissioner concludes. To hold otherwise, it is argued, would be to effectively write § 691 out of the Code, since every distribution of a right to § 691 income would be

susceptible to treatment as a § 662 distribution to a benficiary.[1]

## III.

### A. Applicability of Section 691

Recipients of "income in respect of a decedent" are required to report this income in their federal income tax returns, pursuant to the provisions of section 691(a)(1).[2] In general, § 691(a)(1) provides that all income in respect of a decedent, not includible in his last return or in a prior return, shall be included in the reported income, when received, of (1) his estate, (2) a person entitled to receive the amount directly from the decedent, or (3) a person entitled to receive the amount as a beneficiary through the decedent's estate. In the instant case, the post-mortem bonus was not includible in decedent's income, since he had died prior to the issuance of the bonus. If the post-mortem bonus qualifies as income in respect of a decedent, then Taxpayer, as the estate's beneficiary, would be required to include this amount, when received, in his reported income.

"Income in respect of a decedent" is not defined in the Code. However, the Service's regulations do provide a definition. 26 C.F.R. § 1.691(a)–1(b) states that, in general, "the term refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year...." More specifically, the term includes three categories of income: (1) all accrued income of the decedent who reported his income by use of the cash receipts and disbursements method; (2) income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of the accrued method of accounting; and (3) income to which the decedent had a contingent claim at the time of his death. It is not clear from this definition whether the term "entitled" means legally entitled, as appellant contends, or whether it simply means substantial likelihood of receiving the income, as the Commissioner argues.

Our circuit has, on two previous occasions, attempted to clarify this definition. In *Keck v. Commissioner,* 415 F.2d 531 (6th Cir.1969), the court held that "entitled", as used in the regulation, contemplated that the decedent was required to have a "right" to the income. However, the court failed to definitively answer whether this "right" had to be legally enforceable or whether the substantial likelihood that the decedent would receive the income would suffice.[3] Twelve years later, in *Claiborne*

---

1. The Commissioner has recognized that even under Taxpayer's interpretation there would be narrow circumstances where section 691 would still continue to have viability. Section 663 exempts a few specified distributions, such as specific bequests, from the reach of §§ 661 and 662. If these exempted distributions constituted income in respect of a decedent, then § 691 would apply.

2. Section 691(a)(1) states, in relevant part:

   The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period ... shall be included in the gross income, for the taxable year when received, of:
   (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
   (B) the person, who, by reason of the death of the decedent acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
   (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

3. While the conclusion of Judge McAllister's opinion implies that the right must be legally enforceable ("... at the date of his death, decedent ... possessed neither the right nor *the power to require* the corporations to liquidate and did not, prior to his death, possess the right to receive any proceeds from the contemplated liquidation." 415 F.2d at 535 [emphasis added] ), other portions of his opinion stress that the degree of certainty, at the time of his death, that the decedent would receive the income is an important consideration. ("... his stock had not been converted to an item of income 'in respect of a decedent under section 691', because of the fact that the sale of the stock was

*v. United States*, 648 F.2d 448 (6th Cir. 1981), the court was again faced with this issue. In *Claiborne*, the government asked the court to overrule *Keck* to the extent that it implied that legal enforceability was required. The court, in an opinion written by Judge Edwards, concluded that the decedent had a legally enforceable right to the income at issue in the case and, therefore, it need not address the issue of whether a lesser standard, such as the "economic activities" test suggested by the government,[4] would be sufficient. This issue is squarely presented in this case, however, because the parties have agreed that the decedent did not have a legally enforceable right to receive the post-mortem bonus.

The Second Circuit held, in *O'Daniel's Estate v. Commissioner*, 173 F.2d 966 (2d Cir.1949), a case factually identical to the instant case, that as long as the decedent had provided services from which he had a reasonable expectation that he would be rewarded, any bonuses awarded subsequent to his death for those prior services would constitute income in respect of the decedent, notwithstanding that he did not have a legally enforceable right to the bonus. Other circuits have expressed their approval of this holding.[5]

■■■ *O'Daniel's Estate* should be followed in this case. The key test for determining whether the decedent had a "right" or was "entitled" to the post-mortem bonus should be based on the likelihood, at the time of his death, that he would receive the bonus, *not* on his legal rights to it. The alternative interpretation "would permit parties to avoid taxation simply by failing to embody obligations incurred by reason of decedent's services into a binding contract even in situations where benefits were otherwise paid to discharge these obligations." *Halliday v. United States*, 655 F.2d 68, 71 (5th Cir.1981). If Congress had intended such a result, it could have expressly adopted the legal enforceability test. Similarly, the Service could have done the same, through its regulatory powers, if it had believed that this was Congress' intent. Given their failure to do so, we believe it is unwise for the courts to impose such a requirement.

There was a substantial certainty, at the time of decedent's death, that he would be awarded a bonus for his work for G.M. in 1969. G.M. had consistently awarded bonuses to its executive vice-presidents and it had already made a tentative decision, even prior to his death, to award bonuses to decedent and its other vice-presidents for their 1969 labors. Accordingly, the decedent had a "right" to the post-mortem bonus, within the meaning of § 691, and the bonus, therefore, constituted income in respect of the decedent. Since the bonus is such income, § 691 mandates that Taxpayer report it as income when it was received, not when the rights to it were received.

## B. Applicability of Sections 661 and 662

There is no dispute among the parties that, in the absence of section 691, the provisions of §§ 661 and 662 would govern this transaction. Section 662(a) provides that a beneficiary of an estate shall include in its gross income: (1) the amount of income for the taxable year required to be

---

subject to a number of contingencies; that it was, at that time subject to the approval of the Interstate Commerce Commission, a condition precedent which was not met until eighteen months after decedent's death, and that such approval was neither routine or perfunctory." *Id.* at 534).

**4.** *See generally,* Note, *Judicial Responsibility for Equitable Taxation: A Survey of Sixth Circuit Decisions on Income Tax,* 14 U.Tol.L.Rev. 831, 878–79 (1983).

**5.** *Commissioner v. Linde,* 213 F.2d 1, 3 (9th Cir.), *cert. denied,* 348 U.S. 871, 75 S.Ct. 107, 99

L.Ed. 686 (1954); *Halliday v. United States,* 655 F.2d 68, 71–72 (5th Cir.1981). *Cf. Estate of Peterson v. Commissioner,* 667 F.2d 675, 677–78 and n. 5 (8th Cir.1981) (The court affirmed a Tax Court decision, which had held that one of the tests for determining whether proceeds of a sale constituted income in respect of a decedent was "whether the decedent entered into a legally significant arrangement regarding the subject matter of the sale", but also cited *Halliday* specifically for the proposition that the right to income need not be legally enforceable.).

distributed currently to it; and (2) "[a]ll other amounts properly paid, credited or required to be distributed to such beneficiary." At the same time, section 661(a) permits the estate a deduction for this same amount. Taxpayer concedes that the bonuses were not required to be distributed currently, but it alleges that they constituted "other amounts properly paid" to the beneficiary. The regulations under §§ 661 and 662 make it clear that distributions required by the terms of a decedent's will, as is the case here, are "amounts properly paid" [6]. Accordingly, in the absence of § 691, the distribution of the bonus rights would have been governed by §§ 661 and 662 and the regulations thereunder.

■ However, section 691 does exist and it specifically applies to the transaction at issue here—the distribution of income in respect of a decedent. Sections 661 and 662 apply to a wider range of property interests, including income which would not qualify under § 691. It is a basic rule of statutory construction that a specific statute controls over a general statute. *HCSC-Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981). If we were to hold that the more general statute controls over the specific one, we would effectively eliminate the specific statute. Congress did not enact section 691 merely to have it subsumed by §§ 661 and 662. Accordingly, we hold that this distribution is governed by the specific provisions of § 691 and that the decision of the Tax Court is affirmed in all respects.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority's conclusion that all of the bonus money which was awarded post-mortem is income in respect of a decedent. I disagree, however, with the majority's assumption that sections 661 and 662 of the Internal Revenue Code conflict with section 691. I also disagree with the assumption that if section 691 applies to the instant case the inquiry is ended and taxpayer must lose. I believe that these sections can be reconciled and that proper analysis of section 691's application here leads to a result in favor of taxpayer.

Taxpayer is a trust and a beneficiary of the Rollert Estate. Upon distributing the bonus award rights to taxpayer pursuant to decedent's bequest, the estate deducted the value of those rights from its own taxable income, in accordance with section 661.[1] Upon receiving the rights, taxpayer quite reasonably thought of them as "amounts properly paid, credited or required to be distributed" and therefore, in accordance with section 662, included the value of the rights in its gross taxable income for each year in which it received rights. In subsequent years, when the bonuses were actually paid out, they would sometimes exceed and sometimes fall short of the value previously claimed as income by the taxpayer. When the actual award exceeded the value previously claimed, taxpayer included the excess in its gross taxable income for the year the award was paid out. When the actual award fell short of the value previously claimed, taxpayer did not seek credit for the difference. In short, taxpayer paid income tax on all of the bonus money.

Now taxpayer is told that, prior payment notwithstanding, it must pay that tax again. This is so, according to the majority, because section 691 requires that income in respect of a decedent be reported

---

6. Treas.Reg. §§ 1.662(a)–3(b)(2) and 1.661(a)–2(c).

1. At the core of the Commissioner's theory of this case is the notion that allowing the estate to take the § 661 deduction without first having to claim the value of the bonus rights as income results in a windfall. While this may be, it is a windfall that is expressly authorized by § 661. It is also a windfall that benefits only the estate, not taxpayer. If the Commissioner objects to this windfall, he should have sought a determination of deficiency against the estate and challenged the estate's use of the § 661 deduction. Taxpayer, a beneficiary, had nothing to do with the estate's windfall. Taxpayer, in fact, would have benefitted more by postponing the payment of income tax until the money was received than by paying the tax when the right was received.

as income "when it [is] received, not when the rights to it [are] received." I read section 691 differently.

Section 691(a)(1) states,

The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period ... shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

The most salient feature of this section is that it addresses the question, "*who* must include the income in respect of a decedent in their gross income?" not the question, "*when* must income in respect of a decedent be reported?" In this light, section 691 does not conflict with sections 661 and 662. The majority fears that application of sections 661 and 662 in the instant case would "effectively write section 691 out of the Code, since every distribution of a right to section 691 income would be susceptible to treatment as a section 662 distribution to a beneficiary." This is simply incorrect. Sections 661 and 662 apply to cases where an estate or trust has distributed to a beneficiary amounts properly paid, credited or otherwise required to be distributed. Subsections (A) and (B) of section 691(a)(1) encompass numerous situations where no such distribution would be made. Only

subsection (C) of section 691(a)(1) would necessarily intersect with sections 661 and 662.

Even where these statutes overlap, however, there is no conflict. The instant case illustrates the point. The taxpayer received, by bequest, the right to the bonus awards. Because this was "required to be distributed," section 662 would apply and require taxpayer to include the value of the right in its gross income. Section 691(a)(1)(C) addresses the question of *who* must include income in respect of a decedent in their gross income in situations where the income passes through the estate to a beneficiary. Subsection (C) resolves the issue by allocating the income to the beneficiary. In this regard, subsection (C) adopts the same approach as sections 661 and 662. There is no conflict.

Difficulty arises only if we give an overly technical reading to a peripheral aspect of these statutes, i.e., *when* the amount must be claimed. Section 691 requires the taxpayer include the bonuses in its gross income "for the taxable year when received." The majority asserts, without support or analysis, that this means that taxpayer must claim each bonus amount in the year the cash is received and may not claim it in the year the right to it is received. However, as to when the amount must be claimed, neither section 691 nor section 662 clearly distinguishes between receipt of the right and receipt of the property. Either way, the tax is paid. I cannot believe, and no one has proffered any explanation as to why it would be, that by including the axiomatic language "for the taxable year when received," Congress intended to prohibit people from placing a value on a property right and treating it as gross income in the year the right is received.[2]

A reasonable reading of either section 662 or section 691 might lead any taxpayer to conclude exactly what taxpayer here concluded: that the value of the rights to

---

**2.** Indeed, it would be anomalous that the estate be allowed to deduct the bonus one year and the beneficiary not be required to pay the tax until

several years later, which is the position the Commissioner takes.

the bonuses had to be included in gross income for the year in which the right was received.[3] A basic tenet of statutory construction is that, where possible, we construe statutes to be in harmony rather than in conflict. Instead of doing this, the majority harshly interprets an ambiguous statutory scheme to the detriment of a party who attempted to comply with the law according to a reasonable reading of the statutes involved.

I would reverse the decision of the Tax Court and enter a finding of no deficiency.

---

**3.** This conclusion is supported by the treatment of annuities in the regulations under section 661, which require inclusion of the entire value of an annuity in the year the right to receive annuity payments is acquired. *See* Treas.Reg. § 1.661(a)–2(c).