T.C. Memo. 1997-416

UNITED STATES TAX COURT

NICHOLAS A. AND MARJORIE E. PALEVEDA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 840-96.                    Filed September 18, 1997.

<u>Nicholas A. Paleveda</u>, for petitioners.

<u>Clinton M. Fried</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and additions to tax and
accuracy-related penalties for the taxable years 1990 and 1991 as
follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Accuracy-Related Penalties Sec. 6662(a) |
|------|-----------|------------------|------------------|
| 1990 | $45,861 | $11,465 | $9,172 |
| 1991 | 47,688 | 11,922 | 9,538 |

In the amended answer, respondent asserts revised deficiencies in petitioners' Federal income tax and additions to tax and accuracy-related penalties for the taxable years 1990 and 1991 as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Accuracy-Related Penalties Sec. 6662(a) |
|------|-----------|----------------------------------|------------------------------------------|
| 1990 | $92,568 | $23,142 | $18,514 |
| 1991 | 34,433 | 8,609 | 6,887 |

Unless otherwise indicated, all section and Code references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of ractice and Procedure. After concessions,[1] the issues to be decided are as follows:[2]

1. Whether petitioners have substantiated their claimed deductions on Schedule C for certain business expenses;

2. whether petitioners are entitled to certain passive losses;

---

[1] Petitioners conceded certain adjustments relating to unreported interest income, an IRA distribution and a penalty thereon, a self-employment health insurance deduction, and a self-employment tax deduction. Additionally, at trial, petitioners conceded the sec. 6651(a)(1) additions to tax. We therefore do not consider those additions.
Respondent conceded that petitioners are entitled to additional itemized deductions for real estate taxes in the amount of $7,732, an interest expense in the amount of $15,968, and charitable contributions in the amount of $7,715.

[2] In their petition, petitioners disputed respondent's disallowance of a Schedule A deduction for real estate taxes to the extent of $6,106 for petitioners' 1990 taxable year. Petitioners, however, make no argument on brief concerning that issue. Consequently, we consider it to have been conceded. Rybak v. Commissioner, 91 T.C. 524, 566 (1988).

3. whether petitioners have substantiated their claimed deductions on Schedule A for certain itemized expenses;

4. whether petitioners have failed to report income in the amount of $159,282 for taxable year 1990 and whether petitioners overreported income in the amount of $41,512 for taxable year 1991;

5. whether petitioners are entitled to a business bad debt deduction for taxable year 1990 for the worthlessness of a loan; and

6. whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a) for the taxable years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time they filed their petition in the instant case, petitioners resided in Atlanta, Georgia. Petitioners are husband and wife.[3]

During the years in issue, petitioner Nicholas A. Paleveda (petitioner) was an employee of Mutual Benefit Life Insurance Co. (MBL). Petitioner received from MBL a Form W-2 for 1990 showing wage income in the amount of $468,218.34 with Social Security tax

---

[3] Petitioner Marjorie E. Paleveda signed the Federal income tax returns for the taxable years in issue as Marjorie Ewing.

withheld in the amount of $3,924.45.  MBL has no record of receiving from petitioner any communication disputing the accuracy of the 1990 Form W-2 or assigning petitioner's wage income.  Petitioner is being sued by MBL for commission chargebacks relating to petitioner's 1990 and 1991 wage income.

On May 29, 1986, Ben D. Razon (assignor) and the law firm of Hampton, Paleveda, Murphy, Cody & Levy (assignee or firm) executed an Agreement for Assignment of Partnership Interest (agreement) in Med-Center, a Florida partnership, in consideration of the firm's payment of $30,000.  Petitioner executed the agreement on behalf of the firm.  Additionally, petitioner wrote a check, dated June 2, 1986, from an account in his name to Mr. Razon in the amount of $30,000.  In the memo section of the check was the notation "Partnership Interest".  As to the firm's purchase of the partnership interest in Med-Center, no note was ever executed and no loan amortization schedule was ever issued.

The preamble to the agreement stated that the firm "desires to take an assignment of a partial interest in the partnership share owned by BEN D. RAZON".  Additionally, the agreement provided in relevant part:

> 1.  BEN D. RAZON * * * for and in consideration of the payment of $30,000.00, receipt of which is hereby acknowledged and the assuming by HAMPTON, PALEVEDA, MURPHY, CODY & LEVY of its proportionate share of the Partnership liabilities of the above referenced Partnership * * * does hereby irrevocably assign, transfer and set over to the Assignee a proportionate

share of his right, title and interest in the above referenced Partnership.

* * * * * *

3. Each of the parties hereto agrees to execute any and all documents necessary or appropriate to transfer their interests hereby conveyed or to be conveyed to the Partnership interest in the property owned by the Partnership or the Lease Agreement as it pertains to the property if necessary.

Petitioners filed their Federal income tax returns (returns) for taxable year 1990 on or about May 20, 1992, and for taxable year 1991 on or about June 3, 1994.

Petitioners claimed Schedule C business expenses in the amounts of $188,104 for taxable year 1990 and $171,182 for taxable year 1991. Respondent disallowed business expenses to the extent of $118,371 for taxable year 1990 and $144,187 for taxable year 1991.

Petitioners claimed Schedule E losses in the amount of $17,751 for taxable year 1990 and $12,686 for taxable year 1991. Respondent disallowed losses to the extent of $15,966 for taxable year 1990 and $12,686 for taxable year 1991.

On their return for taxable year 1991, petitioners claimed Schedule A itemized deductions in the amount of $56,927. Respondent disallowed deductions to the extent of $9,244. Respondent has conceded that, before statutory limitations, petitioners are entitled to additional deductions for real estate taxes in the amount of $7,732, charitable contributions in the amount of $7,715, and interest expense in the amount of $15,968.

In the amended answer, respondent asserts that petitioners underreported their gross income to the extent of $159,282 for taxable year 1990 and overreported their gross income to the extent of $41,512 for taxable year 1991. Additionally, during the audit, petitioners claimed a bad debt deduction in the amount of $30,000 that was not reflected on their Federal income tax returns or the notice of deficiency.

Respondent determined that, on the basis of all of the adjustments in the notice of deficiency, petitioners were liable for additions to tax and penalties pursuant to sections 6651(a)(1) and 6662(a). In the amended answer, to reflect the adjustments related to petitioners' underreporting and overreporting of income, respondent increased the addition to tax and penalty for 1990 and decreased the addition to tax and penalty for 1991.

OPINION

The first issue to be decided is whether petitioners have substantiated their claimed Schedule C business expenses that respondent disallowed to the extent of $118,371 for taxable year 1990 and $144,187 for taxable year 1991. Petitioners argue that they are entitled to the deductions, citing Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (under certain circumstances, when taxpayers establish that they incurred a trade or business expense but do not substantiate the amount of the expense, the Court may estimate the amount of the deductible

expense).  Petitioners argue that their business expenses are established by the more than 1,000 canceled checks presented by petitioner at the audit level and by the fact that the deductions in issue were allowed by respondent in the 30-day letter.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed except as to increased deficiencies.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Taxpayers must keep sufficient records to establish the amount of their deductions.  See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

In the instant case, petitioners provided no books, records, or checks substantiating the disallowed business expenses.  As to the checks petitioner claims to have presented at the audit level, we decide petitioners' tax liability on the evidence produced at trial and not a previous record developed at the administrative level.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974), and case cited therein.  Accordingly, on the basis of the record in the instant case, we conclude that petitioners have not carried their burden of substantiating the

amount and purpose of the disallowed business expenses.  As petitioners have failed to establish at trial that they incurred any Schedule C trade or business deductions beyond those allowed by respondent, Cohan v. Commissioner, supra, is not applicable in the instant case.  Accordingly, we sustain respondent's disallowance of those deductions.

The next issue to be decided is whether petitioners are entitled to certain passive losses that respondent disallowed to the extent of $15,966 for taxable year 1990 and $12,686 for taxable year 1991.  In the exhibits accompanying the notice of deficiency, respondent listed petitioners' passive losses for the taxable years in issue under the heading "PART I - RENTAL REAL ESTATE WITH ACTIVE PARTICIPATION" and computed the extent to which petitioners were entitled to the $25,000 offset pursuant to section 469(i).[4]  During each of the taxable years in issue,

---

[4]     Sec. 469(i)(1) provides:

    (1)  In general.--In the case of any natural person, subsection (a) shall not apply to that portion of the passive activity loss or the deduction equivalent (within the meaning of subsection (j)(5)) of the passive activity credit for any taxable year which is attributable to all rental real estate activities with respect to which such individual actively participated in such taxable year (and if any portion of such loss or credit arose in another taxable year, in such other taxable year).

    Sec. 469(i)(2) provides:

    (2)  Dollar limitation.--The aggregate amount to which paragraph (1) applies for any taxable year shall
                                        (continued...)

however, petitioners' modified adjusted gross income was greater than $150,000, with the result that the $25,000 offset was phased out.[5]

Petitioners argue that they meet the requirements of the section 469 material participation test in that the rental properties were petitioners' former homes rented out and petitioner materially participated in their active management. Additionally, petitioner contends that, pursuant to section 469(i), their passive losses should be exempted by the $25,000 offset (to the extent of the phaseout) for rental real estate activities.

Respondent argues that the exception provided in section 469(c)(7) for certain taxpayers who materially participate in a real property business does not apply to the years in issue. We agree. Section 469(c)(2) provides the general rule that the term "passive activity" includes any rental activity. Section 469(c)(4) provides that section 469(c)(2) is to be applied without regard to whether or not the taxpayer materially participates in the activity. For taxable years beginning after

---

[4](...continued)
    not exceed $25,000.

[5]    Sec. 469(i)(3)(A) provides:

        (A)  In general.--In the case of any taxpayer, the
    $25,000 amount under paragraph (2) shall be reduced
    (but not below zero) by 50 percent of the amount by
    which the adjusted gross income of the taxpayer for the
    taxable year exceeds $100,000.

December 31, 1993, section 469(c)(7) provides an exception to the general rule in section 469(c)(2) for taxpayers meeting certain conditions.[6] The taxable years in issue in the instant case, however, are 1990 and 1991. Accordingly, the section 469(c)(7) exception does not apply in the instant case.

Respondent argues that, for purposes of the $25,000 offset for rental real estate, petitioners have not established that they "actively participated" in their rental real estate activities as required by section 469(i). In the instant case, however, respondent phased out the $25,000 offset because petitioners' modified adjusted gross income exceeded $150,000 for each of the taxable years in issue. As petitioners provide no further arguments as to their passive losses, we sustain respondent's determinations, to the extent that the $25,000

---

[6] Sec. 469(c)(7) provides, for taxpayers meeting the requirements of sec. 469(c)(7)(B), that

> (A) In general.--If this paragraph applies to any taxpayer for a taxable year --
>
> > (i) paragraph (2) shall not apply to any rental real estate activity of such taxpayer for such taxable year, and
> >
> > (ii) this section shall be applied as if each interest of the taxpayer in rental real estate were a separate activity.
>
> Notwithstanding clause (ii), a taxpayer may elect to treat all interests in rental real estate as one activity. Nothing in the preceding provisions of this subparagraph shall be construed as affecting the determination of whether the taxpayer materially participates with respect to any interest in a limited partnership as a limited partner.

offset is phased out once the Rule 155 computations that we order below are made.  Rule 142(a).

As stated in our findings of fact, after concessions and the application of statutory limitations, the amount of disallowed deductions in issue is $4,934.  Respondent argues that petitioners have not substantiated their deduction for real estate taxes to the extent of $1,384 and their deduction for charitable contributions to the extent of $3,548 ($2 mathematical error).  Petitioners argue that their deductions are established by the canceled checks presented by petitioner at the audit level.  Additionally, petitioners argue that, as respondent disallowed many of the checks at the audit level on the grounds that petitioners could have received a personal benefit, it is impossible for petitioners to prove that they did not receive such a benefit.

In the instant case, petitioners provided no books, records, or checks substantiating the disallowed deductions.  As to the checks petitioner claims to have presented at the audit level, we decide petitioners' liability for income tax deficiencies on the evidence produced at trial and not a previous record developed at the administrative level.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974).  On the basis of the record in the instant case, we conclude that petitioners have not carried their burden of substantiating the amount and purpose of the disallowed deductions.  Accordingly, we sustain respondent's

disallowance of Schedule A deductions to the extent of $4,934 for petitioners' 1991 taxable year.

We next decide whether petitioners have failed to report certain income for taxable year 1990 and whether petitioners have overreported income for taxable year 1991.[7]  Respondent increased by $159,282 petitioners' gross income for their 1990 taxable year to coincide with the amount reported on petitioner's Form W-2 from MBL and decreased petitioners' gross income by $41,512 for their 1991 taxable year.[8]  At trial, Peter J. Gelcius, the Agency Finance Supervisor of MBL Life Assurance Co. (formerly MBL), testified that, on the basis of his review of MBL's business records, MBL made payments to petitioner in the amount of $468,218.34 for 1990 and in the amount of $98,726.62 for 1991. Additionally, Mr. Gelcius testified that the checks from MBL were made out to petitioner and that, in petitioner's file at MBL, there was no assignment of petitioner's income.

A copy of petitioner's Form W-2 from MBL was admitted in evidence, solely for the purpose of establishing that petitioner received a Form W-2 from MBL which stated that during 1990 MBL paid wage income in the amount of $468,218.34 to petitioner. Additionally, respondent introduced, solely for impeachment

[7]    Respondent raised this issue as a new matter in the amended answer and, accordingly, bears the burden of proof.  Rule 142(a).

[8]    Petitioners did not agree that they overreported income for their 1991 taxable year.

purposes, certain business records of MBL which stated that, during 1990, MBL paid to petitioner wage income in the amount of $468,218.34.

Petitioners contend that, during 1990, petitioner received no wage income from MBL but did receive $308,936 from Stuart Financial Planning Corp. (Stuart). Petitioners argue that, at the audit, they established that MBL paid Stuart, which paid $308,936 to petitioner. Additionally, petitioners argue that they reported income that was deposited in petitioners' account at NationsBank for their 1990 taxable year. Alternatively, petitioners argue that petitioner merely collected income in the role of agent and, therefore, is not required to include that amount in gross income.

Respondent has shown that, during taxable years 1990 and 1991, petitioner received from MBL wage income in the amounts of $468,218.34 and $98,726.62, respectively. Mr. Gelcius testified that MBL made payments to petitioner in the amount of $468,218.34 for 1990 and in the amount of $98,726.62 for 1991. Mr. Gelcius' testimony as to the payments made to petitioner during 1991 is corroborated by the parties' stipulation that petitioner received from MBL wages in the amount of $98,726. Additionally, at trial, Mr. Gelcius' testimony was neither discredited nor contradicted by petitioner.

Petitioners argue that MBL paid Stuart, which then paid petitioner. At trial, however, petitioner did not present

evidence that disputed Mr. Gelcius' testimony that MBL made payments to petitioner.  The only questions that petitioner asked Mr. Gelcius concerning the issue were:  (1) "Do you have any knowledge of me actually physically receiving the check and depositing it in my bank account?", to which he responded:  "I was not asked to check on that.  But no, I don't.  But I could have, though", and (2) "So as far as you know, this check could have gone to Angelo Scharelli [the agency manager for the MBL division in south Florida], who in turn deposits [it] in a master bank account?", to which Mr. Gelcius responded:  "I have no knowledge of where that check would have went out.  All I know is that it would have been sent to Nicholas A. Paleveda."  Mr. Gelcius' testimony was uncontroverted.

Petitioners argue that they established at the audit that MBL paid Stuart, which then paid $308,936 to petitioner.  We, however, decide petitioners' liability for income tax deficiencies on the evidence produced at trial and not a previous record developed at the administrative level, Greenberg's Express, Inc. v. Commissioner, supra, and petitioners did not offer any documentary evidence establishing that MBL paid Stuart and that Stuart paid petitioner.  Additionally, petitioners did not provide any account statements from NationsBank or other documentary evidence to establish that petitioner received only $308,936 in income during 1990.  Finally, petitioners offered no documentary evidence establishing that petitioner merely

collected income in the role of agent.

On the basis of the record in the instant case, we conclude that during 1990, petitioner received from MBL wage income in the amount of $468,218.34. Respondent has conceded that petitioners are entitled to a decrease in their gross income for 1991 to the tent of $41,512.[9] Accordingly, we sustain respondent's determinations.

The next issue to be decided is whether petitioners are entitled to a bad debt deduction pursuant to section 166(a)(1) for the worthlessness of an alleged loan. Petitioners argue that the $30,000 payment to Mr. Razon during 1986 was a loan that was made in connection with petitioner's trade or business and that became worthless during 1991. Respondent contends that petitioners have not established that a debtor-creditor relationship existed between petitioner and Mr. Razon. Alternatively, respondent argues that, if a debtor-creditor relationship existed, petitioners have not established that the

[9] In their brief, petitioners argued that, for 1991, they are entitled to decrease their gross income to the extent of $87,159, which petitioners allege is an amount that was characterized by a Florida State court as a loan by MBL to petitioner. Respondent, noting the decrease in petitioners' income for 1991 to the extent of $41,512, argues that the issue was not raised in the petition or at trial. We agree. Generally, we do not consider new issues raised for the first time on brief. Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. on other issues 752 F.2d 1128 (6th Cir. 1985); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975). Accordingly, in the instant case, we will not address the issue of excluding the alleged loan in the amount of $87,159 from gross income.

debt became worthless during 1990.

Section 166(a)(1) provides, in general, for the deduction of debts that become wholly worthless during a taxable year. The bad debt deduction is limited to a bona fide debt; that is, a debt that arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs. For purposes of section 166, a contribution to capital is not considered a debt. In re Uneco, Inc., 532 F.2d 1204, 1207 (8th Cir. 1976); Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs.

Characterization of an advance as either a loan or a capital contribution is a question of fact which must be answered by reference to all of the evidence, with the burden on the taxpayer to establish that the alleged loans were bona fide debts. Rule 142(a); Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Yale Ave. Corp. v. Commissioner, 58 T.C. 1062, 1073-1074 (1972). Objective factors are to be considered, and the taxpayer's subjective intent alone is not conclusive of the issue of characterizing an advance as debt or equity. In re Uneco, Inc., supra at 1209.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering,

292 U.S. 435 (1934). Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. at 831-832; sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. at 90; sec. 1.6001-1(a), Income Tax Regs.

On the basis of the record in the instant case, we conclude that petitioner has not established that the $30,000 payment to Mr. Razon was bona fide debt. Although petitioner testified that he made a loan to Mr. Razon, petitioner's subjective intent alone is not conclusive of the issue of characterizing an advance as debt or equity. In re Uneco, Inc., supra. Petitioners provided no documentary evidence corroborating the payment as a loan.

Several considerations support our conclusion that petitioner's payment to Mr. Razon was not a bona fide debt. Petitioner testified that he and Mr. Razon did not execute a note or establish a loan amortization schedule. The agreement provides that "BEN D. RAZON * * * does hereby irrevocably assign, transfer and set over to * * * [petitioner] a proportionate share of his right, title and interest in the above referenced Partnership". Additionally, pursuant to the agreement, the parties agreed "to execute any and all documents necessary or appropriate to transfer their interests hereby conveyed or to be

conveyed to the Partnership interest in the property." The check written by petitioner to Mr. Razon includes in the memo section the notation "Partnership Interest". Accordingly, the foregoing considerations dissuade us from concluding that petitioner's $30,000 payment was a loan as opposed to something else, e.g., the purchase of a partnership interest in Med-Center. Consequently, we conclude that petitioners have not established that the $30,000 payment to Mr. Razon constitutes a bona fide debt that is deductible as a business bad debt. Petitioners have not advanced any other theory upon which a deduction could be premised. Accordingly, we hold that petitioners are not entitled to a bad debt deduction in the amount of $30,000.

Lastly, we turn to the accuracy-related penalties determined by respondent.[10] In the notice of deficiency, respondent determined that, on the basis of all of the adjustments in the notice of deficiency, petitioners were liable for penalties pursuant to section 6662(a) for taxable years 1990 and 1991. In the amended answer, to reflect the adjustments related to petitioners' underreporting and overreporting of income, respondent increased the penalty for taxable year 1990 and decreased the penalty for taxable year 1991. Accordingly, the

---

[10] In their brief, petitioners argue that the sec. 6651(a)(1) additions to tax should be reduced. At trial, however, petitioners conceded the additions to tax. See supra note 1. Accordingly, we do not consider petitioners' argument. In any case, petitioners offered no evidence on the issue. Rule 142(a).

increase in the penalty attributable to petitioners' underreporting of income for 1990 is a new matter within the meaning of Rule 142(a), for which respondent bears the burden of proof. Respondent, however, made no argument on brief regarding the increase. Consequently, we consider the increase in the penalty attributable to petitioners' underreporting of income for 1990 to have been conceded by respondent. Rybak v. Commissioner, 91 T.C. 524, 566 (1988).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax that is attributable to, inter alia, (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including failure to exercise due care, failure to do what a reasonable person would do under the circumstances, or failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of the Code or the temporary or final regulations issued pursuant to the Code. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. A substantial understatement of tax is defined as the amount which exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply to any portion

of an underpayment with respect to which it is shown that there was a reasonable cause and that the taxpayer acted in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Id. Petitioners must establish error in respondent's determination that they are liable for the penalty provided pursuant to section 6662(a). Rule 142(a); Estate of Monroe v. Commissioner, 104 T.C. 352, 366 (1995).

As to the penalties determined by respondent in the notice of deficiency, petitioners contend that they are not liable because, at the audit, they produced canceled checks in support of their deductions. Additionally, petitioners argue that respondent required evidence beyond petitioners' checks that, in some cases, was impossible to produce. Finally, petitioners contend that there was no negligence and that they acted in good faith.

We conclude that petitioners have not established error in respondent's determination that they are liable for the section 6662(a) penalty. The section 6662(a) penalty does not apply to

any portion of an underpayment with respect to which it is shown that there was a reasonable cause and that the taxpayer acted in good faith.  Sec. 6664(c)(1).  We conclude that the presentation of canceled checks by petitioners at the audit, standing alone, does not establish that there was reasonable cause for the portion of the underpayment or that petitioners acted in good faith with respect to that portion.  Additionally, petitioners' mere allegation that, in the instant case, they were not negligent and that they acted in good faith does not meet the requirements of section 6664(c).  Petitioners have provided no other evidence upon which a finding of reasonable cause and good faith could be premised.  Accordingly, we sustain respondent's determination of a section 6662(a) penalty as to the deficiency which is calculated in the Rule 155 computations that we order below.

We have considered all of petitioners' remaining arguments and find them to be without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.