**ESTATE OF Charley W. PETERSON, Deceased, Della E. Peterson and Charles R. Peterson, Co-Executors, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 81–1019.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1981.

Decided Dec. 17, 1981.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Daniel F. Ross (argued), James F. Miller, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

John E. North (argued), Jeffrey J. Pirruccello, McGrath, North, O'Malley & Kratz, P. C., Omaha, Neb., for appellees.

Before STEPHENSON, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

This is an appeal from the decision of the Tax Court holding that the sale proceeds received by the estate of Charley W. Peterson from the sale of 2,398 calves did not constitute "income in respect of a decedent" under § 691(a)(1) of the Internal Revenue Code[1] (all statutory references are to the

1. § 691(a)(1) provides in part:

(a) *Inclusion in gross income.—*

(1) *General rule.—*The amount of all items of gross income in respect of a decedent which are not properly includible in respect

Code). *Estate of Peterson v. Commissioner,* 74 T.C. 630 (1980). Five of the Tax Court judges, however, concurred only in the result because the Commissioner never sought to allocate the sale proceeds between those calves which were "deliverable" and not "deliverable" on the date of the decedent's death. *Id.* at 646 n.1 (Simpson, J., concurring). For reversal the Commissioner now argues that because two-thirds of the calves were "deliverable" on the date of the decedent's death, the sale proceeds attributable to those calves should be considered "income in respect of a decedent." We affirm the decision of the Tax Court.

The facts are not disputed. The following statement of facts is based upon the Tax Court opinion. The decedent, Charley W. Peterson, was in the business of raising and selling cattle. On July 11, 1972, he entered into a "livestock sales contract" with the Max Rosenstock Co., through its agent R.E. Brickley. Under the terms of this contract, the decedent was to raise and sell to the Max Rosenstock Co. "approximately 3,300 calves" at $0.49 per pound, with the date of delivery to be designated by the decedent upon five days notice. One group of calves (the Brown County calves) was to be delivered no later than November 1, 1972; the other group (the Holt County calves) was to be delivered no later than December 15, 1972. The calves were to be from three to eleven months old and in "merchantable condition" when delivered. As provided in the contract, the Max Rosenstock Co. paid $46,500 in "earnest money" to the decedent on July 13, 1972. The risk of loss was on the decedent until delivery.

The decedent did not designate a delivery date or deliver any calves by the November 1 delivery date. The record contains no reason why the decedent did not designate a delivery date or deliver the Brown County calves on or before the November 1, 1972, delivery date specified in the contract. The decedent died on November 9, 1972. The estate (the taxpayer) assumed responsibility for the calves, designated several December delivery dates, and delivered a total of 2,929 calves, 2,398 owned by the estate and 531 owned by the decedent's sons, Willis Peterson and Charles R. Peterson. The calves were accepted by the Max Rosenstock Co. As found by the Tax Court, approximately two-thirds of the calves were in a "deliverable" condition as of the date of the decedent's death. The remaining calves were not "deliverable" on that date because they were too young.

The estate reported the sale of the calves on its fiduciary income tax return and computed the gain from the sale by subtracting the fair market value of the calves on the date of the decedent's death from the sale proceeds. The Commissioner, however, determined that the gain from the sale constituted "income in respect of a decedent" under § 691(a)(1) and recomputed the estate's gain on the sale by subtracting the decedent's adjusted basis in the calves from the sale proceeds. *See* §§ 691(a)(1), 1014(a) (basis of property acquired from decedent is the fair market value at date of decedent's death), 1014(c) (§ 1014(a) does not apply to property which constitutes a right to receive an item of income in respect of a decedent under § 691). The characterization of the sales transaction thus determines whether the estate uses the decedent's adjusted basis or a stepped-up basis (fair market value on date of death) in calculating the gain from the sale. The amount of income tax deficiency at issue is $185,384.10.

The Tax Court decided that the sale proceeds did not constitute "income in respect of a decedent" under § 691(a)(1). 74 T.C. at 641. After noting that § 691 does not itself define "income in respect of a decedent," the Tax Court reviewed the history of the

of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

  (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; . . .

section,[2] referred to the applicable regulations, 26 C.F.R. § 1.691(a)(1)–(3) (1981),[3] examined the case law,[4] and distilled a four-factor test for determining whether sale proceeds constitute "income in respect of a decedent": (1) whether the decedent en-

**2.** As summarized in *Keck v. Commissioner*, 415 F.2d 531, 533 (6th Cir. 1969):

> Under the prior law, only the items which were accruable to a taxpayer at the time of his death were required to be included in the last return. This discriminated against accrual-basis taxpayers and allowed much income of cash-basis taxpayers to escape income tax. To correct this situation, Congress provided that in the case of both cash and accrual taxpayers, the last return must include all items accruable at death. The Supreme Court in *Helvering v. Enright*, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 (1941), held that the term "accrual" in the statute was not to be construed narrowly in its accounting sense, but broadly to effectuate the purpose of the statute. However, such broad construction resulted in the bunching of income in the last return and its resultant taxation in higher surtax brackets.

> It was to remedy this situation that Congress enacted the forerunner of Section 691, ... which provides that such income as was formerly required to be included in the last return, because it was accrued though not actually received, is taxable to the recipient and has the same character in his hands that it would have had in the hands of the decedent.

*See generally* 3 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 83.1.1 (1981); M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 140–43 (1970); Note, *Sales Transactions and Income in Respect of a Decedent*, 3 Ga.L.Rev. 606, 607–09 (1969).

**3.** 26 C.F.R. § 1.691(a)–1(b) (1981) provides in part:

> (b) *General definition.* In general, the term "income in respect of a decedent" refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent.... Thus, the term includes—

> (1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method;

> (2) Income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of an accrual method of accounting; and

> (3) Income to which the decedent had a contingent claim at the time of his death. The regulations include several examples of the application of § 691; the examples are slightly more illuminating than the regulations. Example (5)(1) is helpful:

> A owned and operated an apple orchard. During his lifetime, A sold and delivered 1,000 bushels of apples to X, a canning factory, but did not receive payment before his death. A also entered into negotiations to sell 3,000 bushels of apples to Y, a canning factory, but did not complete the sale before his death. After A's death, the executor received payment from X. He also completed the sale to Y and transferred to Y 1,200 bushels of apples on hand at A's death and harvested and transferred an additional 1,800 bushels. The gain from the sale of apples by A to X constitutes income in respect of a decedent when received. On the other hand, the gain from the sale of apples by the executor to Y does not.

*Id.* § 1.691(a)–2(b) (Ex. 5). The sale to X involves a "completed sale." A has sold and delivered the apples; A dies just before receiving payment. The sale to Y, however, is negotiated by A and completed by A's executor after A's death. In the view of one commentator, the wording "implies that the terms of the sale were identical to those negotiated by the decedent." 3 B. Bittker, Federal Taxation of Income, Estates and Gifts, *supra*, ¶ 83.1.2, at 83–7 & n.23. The present case involves an intermediate fact situation: A has "sold" the property in the sense that the property is the subject of a valid sales contract; however, at the time of A's death the property has not been delivered or otherwise disposed of; and after A's death the executor actually delivers the property. In other words, in the sale to Y in the example, if A had entered into a sales contract with Y and then died, leaving to A's executor the task of harvesting and transferring the apples, would the sale proceeds constitute income in respect of a decedent?

**4.** *See Keck v. Commissioner*, 415 F.2d 531, 533–34 (6th Cir. 1969); *Trust Co. v. Ross*, 392 F.2d 694, 695 (5th Cir. 1967) (per curiam), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); *Commissioner v. Linde*, 213 F.2d 1, 4–8 (9th Cir.), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (1954); *Estate of Sidles v. Commissioner*, 65 T.C. 873, 881 (1976), *aff'd mem.* 553 F.2d 102 (8th Cir. 1977). *See also* 2 J. Mertens, Law of Federal Income Taxation § 12.102c (rev. ed. 1974).

tered into a legally significant arrangement regarding the subject matter of the sale,[5] (2) whether the decedent performed the substantive (nonministerial) acts required as preconditions to the sale,[6] (3) whether there existed at the time of the decedent's death any economically material contingencies which might have disrupted the sale,[7] and (4) whether the decedent would have eventually received the sale proceeds if he or she had lived.[8] 74 T.C. at 639–41.

The Tax Court concluded that the decedent had entered into a legally significant agreement to sell the calves on the basis of the livestock sales contract. The Tax Court also found that there were no economically material contingencies which could potentially have disrupted the sale; the transaction was not contingent upon the actions or approval of third parties. *Compare Keck v. Commissioner*, 415 F.2d 531, 534 (6th Cir. 1969). Further, the decedent, if he had lived, would have received the sale proceeds; the transaction was not effective only at death. *See* note 8 *supra*. The Tax Court, however, concluded that the decedent had not performed the substantive

acts required under the livestock sales contract. 74 T.C. at 644. At the date of the decedent's death one-third of the calves were not in "deliverable" condition; all the calves required care and feeding until actually delivered. The estate assumed responsibility for the care and feeding of all the calves until delivery (for approximately one month). The Tax Court concluded that the activities performed by the estate were not perfunctory or ministerial and that these activities were sufficient to remove the sale proceeds from the scope of § 691(a)(1). *Id.* at 644–45.

On appeal the Commissioner does not disagree with the four-factor test developed by the Tax Court. The Commissioner argues that the Tax Court misapplied the test and that, under a proper application of the test, that portion of the sale proceeds attributable to the calves which were "deliverable" at the date of the decedent's death constitute "income in respect of a decedent" under § 691(a)(1). *See* 74 T.C. at 646 (Simpson, J., concurring). This argument was not raised below by either party.[9] Ordinarily we do not consider questions of law

**5.** As noted by the Tax Court, "[t]his arrangement may take a variety of forms: an express executory contract of sale [as in *Trust Co. v. Ross, supra*, 392 F.2d 6941]; an implied contract for sale [A delivers apples to Y, Y accepts the apples, A dies before Y can pay for them]; or a contractual arrangement with a cooperative marketing association [as in *Commissioner v. Linde, supra*, 213 F.2d 1 (no contract or sale, just delivery of grapes to marketing cooperative; proceeds held income in respect of a decedent when received) ]." *Estate of Peterson v. Commissioner*, 74 T.C. 630, 639 (1980) (parentheticals substituted and expanded). *See also Halliday v. United States*, 655 F.2d 68, 72 (5th Cir. 1981) (the right to income need not be legally enforceable).

**6.** "One indicium of whether a decedent has performed the applicable substantive acts is whether he has delivered, or somehow placed, the subject matter of the sale beyond his control prior to his death." *Estate of Peterson v. Commissioner, supra*, 74 T.C. at 640. *Compare* M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries, *supra*, 180–84 ("[E]ven where the property has been made the subject of a binding, executory contract of sale, if the benefits and hazards of ownership are still possessed by the decedent at his death, the property is entitled

to a § 1014(a) basis in the hands of his estate, and his negotiated profit will not be taxed to his estate (or to anyone) under § 691 when the sale is completed after his death.") (footnote omitted), *with* Gordon, *Income in Respect of a Decedent and Sales Transactions*, 1961 Wash. U.L.Q. 30, 37 (§ 691 should apply to sale proceeds from sales which at the time of the decedent's death are incomplete "only as to delivery of the res and receipt of the purchase price").

**7.** *Cf. Keck v. Commissioner, supra*, 415 F.2d at 534 (sale of stock was contingent upon Interstate Commerce Commission approval; proceeds held not income in respect of decedent where ICC approval not granted at time of the decedent's death).

**8.** *See* 26 C.F.R. § 1.691(a)–2(b) (Ex. 4) (buy-sell agreement effective at date of death; proceeds not income in respect of a decedent because the decedent could not have received the proceeds if he had lived).

**9.** The taxpayer (the estate) argued that none of the sale proceeds was income in respect of a decedent; the Commissioner argued that all of the sale proceeds was income in respect of a decedent.

which were not presented to the court below except in "exceptional cases or particular circumstances . . . where injustice might otherwise result." *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). However, in order to determine whether the Tax Court misapplied its four-factor test, we necessarily reach the Commissioner's apportionment or allocation argument. We think that the apportionment or allocation argument incorrectly emphasizes the condition or character of the subject matter of the sale instead of the status of the transaction itself at the time of the decedent's death. For the reasons discussed below, we affirm the decision of the Tax Court.

■ Stated in misleadingly simple terms, whether income is considered income in respect of a decedent under § 691 depends upon whether the decedent had a right to receive income at the time of his or her death. The focus is upon the decedent's *right or entitlement to income* at the time of death.

Although it is pertinent to inquire whether the income received after death was attributable to activities and economic efforts of the decedent in his lifetime, these activities and efforts must give rise to a right to that income. And the right is to be distinguished from the activity which creates the right. Absent such a right, no matter how great the activities or efforts, there would be no taxable income under § 691.

*Trust Co. v. Ross*, 392 F.2d 694, 695 (5th Cir. 1967) (per curiam), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); *accord, Halliday v. United States*, 655 F.2d 68, 71 (5th Cir. 1981); *Claiborne v. United States*, 648 F.2d 448, 452 (6th Cir. 1981); *Keck v. Commissioner, supra*, 415 F.2d at 533–34; *Commissioner v. Linde*, 213 F.2d 1, 4–8 (9th Cir.), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (1954); *Estate of Sidles v. Commissioner*, 65 T.C. 873, 881 (1976), *aff'd mem.* 553 F.2d 102 (8th Cir. 1977).

The leading commentators have proposed the following as a "tentative working definition" of income in respect of a decedent: [10]

Items of income in respect of a decedent . . . are payments received toward satisfaction of a right or expectancy created almost entirely through the efforts or status of the decedent and which, except for his death and without further

10. Ferguson, Freeland and Stephens identified "four salient characteristics" of income in respect of a decedent:

First, the item of income must have been taxable to the decedent had he survived to the time the income was realized. This is to say, the income must have been attributable to *his* services, *his* sales, or *his* income-producing property.

Second, although the decedent must have become "entitled" to the income by his death, his rights must not have matured sufficiently to require inclusion of the income in his final income tax return under the accounting method employed by him. This return, normally filed by the executor, is prepared on the decedent's regular method of accounting without reference to any items which might have become accruable solely because of death. . . .

Third, what is transferred at death must be a passive right to receive income, as distinguished from "property" entitled to a fair market value basis under § 1014(a). Although the gross estate for Federal estate tax purposes includes, along with all other kinds of property rights, the value of any rights to

future income, §§ 691 and 1014(c) force a differentiation between income rights and other assets for income tax purposes. Here, too, generalization is difficult. . . . Regardless of the nature of the asset, § 691 applies only when the decedent performed all substantial acts within his control necessary to convert prior efforts or property into an intangible right to receive income.

Fourth, the recipient of the right to the income in question must have acquired it solely by reason of the death of the taxpayer who created it. This characteristic subjects income in respect of a decedent to two important limitations, each of which sheds further light upon the basic concept: First, § 691 presupposes a gratuitous transfer from a decedent at death of a right to income. Second, the ultimate proceeds must be received solely because of the taxpayer's passive status as the decedent's transferee of the specific right.

M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries, *supra*, 146–48 (emphasis in original; footnotes omitted).

action on his part, the decedent would have realized as gross income. Two observations should be made. First, the concept is manifestly broader than the mere accrued earnings of a cash basis decedent. Second, despite the breadth of this tentative definition, § 691 does not reach the income potential in a decedent's appreciated property, even if that appreciation is due to the decedent's own efforts. Further action on the decedent's part (e.g., a sale) would have been required for such appreciation to be realized as income. Within this definition farm produce inventories grown, harvested, and processed for market, but not delivered by the decedent before his death, even though they come very close to representing ordinary income actually realized, are "property" rather than a bare right to income until they are sold. Not being income in respect of a decedent, they qualify for a new basis at death under the fair market value provision of § 1014(a).

M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 146 (1970) (footnote omitted).

"The impact of § 691 may vary according to the nature or origin of the income. Such variation extends to questions of timing and characterization and even to the question whether a particular receipt must be treated as income in respect of a decedent at all." Id. at 162. For example, items of income attributable to the decedent's services are generally income in respect of a decedent.[11] Characterization of items of income attributable to sales proceeds, as in the present case, however, is less clear, particularly because of the operation of the basis rules of § 1014. Id. at 177–78.

[I]t may be difficult to determine whether the decedent's steps prior to his death had proceeded sufficiently to treat sales proceeds received after death as income in respect of a decedent. The test here is not quite whether the decedent "closed" the sale or transferred title and possession of an asset before death. Rather, it is whether his successor acquired a right to receive proceeds from an asset's disposition on the one hand, or acquired the asset itself on the other. Depending upon the subject and the terms of a sale, death may interrupt the transaction at a number of stages which do not fall clearly on either side of this murky distinction.

Id. at 178–79.

As noted by Ferguson, Freeland and Stephens, "the definitional problem under § 691(a) is complicated by the general rule of § 1014(a) according a basis equal to estate tax value to the decedent's "property" other than such § 691(a) "rights." Id. at 180. As illustrated by the present case, the tax consequences of characterizing a particular item of income may be substantial. Ferguson, Freeland and Stephens apparently do not favor characterizing sales proceeds from sales transactions substantially "incomplete"[12] at the time of the decedent's death as income in respect of a decedent:

[W]here there is a contract of sale which would have been completed during the

---

**11.** The decedent's personal services are the most common source of IRD [income in respect of a decedent], including payment for the decedent's final pay period, compensation paid in installments continuing after his death, billed but uncollected fees and commissions, and accrued vacation and leave pay. Items attributable to the decedent's services but dependent on future events can also constitute IRD, such as an insurance agent's right to receive renewal commissions on life insurance policies sold by him, a lawyer's right to share in contingent fees received by his firm in cases that are uncompleted at the time of his death, and a bonus paid after an employee's death by an employer under a plan that did not vest enforceable rights in the employees. More controversial are cases holding that allowances paid by employers to the surviving spouse or other dependents of a faithful employee, if not excludable from gross income as "gifts" or employee death benefits under IRC § 102 or § 101(b)(1), constitute IRD . . . .
3 B. Bittker, Federal Taxation of Income, Estates and Gifts, supra, ¶ 83.1.2, at 83–5 to –6 (footnotes omitted).

**12.** Tax commentators differentiate between "executory sales contracts" and "sales," even though such a distinction may not make much sense in contract law. See Note, Sales Transactions and Income in Respect of a Decedent, supra, 3 Ga.L.Rev. at 617 ("closed transaction"). As illustrated in the examples in the relevant regulations, see note 3 supra, delivery

decedent's life but for his death, the proceeds received upon culmination of the sale by the decedent's transferee will be taxed as income in respect of a decedent if no substantial conditions remained to be performed by the decedent at his death. Thus, if the executor had only a passive or ministerial role to play in completing the sale, the proceeds should be taxed as income in respect of a decedent.

... Whenever the decedent negotiates a contract enforceable by his executor after death, the profit may properly be attributed to the decedent's bargaining and other efforts, which would seem to suggest income treatment for a part of the post-death receipts. On the other hand, the basis rules of § 1014(a) suggest that, wherever the risks inherent in ownership remain with the decedent until death, adjustments to the property's basis (and hence variations in the amount of gain or loss under the contract) remain possible until actual disposition by the decedent's successor.

*Id.* at 183–84 (footnote omitted).

■ Here, the task remaining to be performed by the estate was performance of the contract. We agree with the conclusion of the Tax Court that performance of the contract, which, under the circumstances, involved care and feeding of livestock and delivery, cannot be characterized as a ministerial or minor act. However, we think that characterization of the tasks which re-

main after the death of the decedent should not necessarily depend upon the nature of the subject matter of the sales transaction. For example, the subject matter of the sales transaction in the present case was livestock, which obviously required care and feeding. What if the subject matter was not livestock but logs or refrigerators? It would still be the task of the decedent's transferee to deliver or otherwise dispose of the logs or refrigerators, even though that type of property does not require the care that livestock does.

We recognize that the analysis followed by the Tax Court emphasizes delivery or disposal of the subject matter of the sales transaction and, to a certain degree, discounts the significance of the sales contract. *Compare* Gordon, *Income in Respect of a Decedent and Sales Transactions,* 1961 Wash.U.L.Q. 30, 37–38 (proposing that § 691 should apply to sales proceeds if the contract of sale is incomplete at death "only as to delivery of the res and receipt of the purchase price"). Nonetheless, this analysis is not inconsistent with *Trust Co. v. Ross, supra,* 392 F.2d at 697, where the contract of sale was executed and the stock was placed in escrow before the death of the decedent and the tasks remaining for the estate were "minor," and *Commissioner v. Linde, supra,* 213 F.2d at 4–8, where the decedent had delivered the property before death to the marketing cooperative, thus "converting" the property into a right to receive income. Moreover, "while the death

or actual disposition of the subject of a sales contract before death is a "completed" sale and the sale proceeds received after death is income in respect of a decedent. Actual disposition of the subject matter, in the absence of any sales contract or agreement, was sufficient to make the post-death receipt of proceeds income in respect of a decedent in *Linde, supra,* 213 F.2d at 4–8 (decedent was a member of an agricultural marketing cooperative). If the decedent neither enters into a sales contract nor delivers the property before death, the post-death disposition of the property by the executor does not produce income in respect of a decedent.

The difficult question arises where the decedent has made arrangements to dispose of the property (such as entering into a sales contract) *but* dies before delivering or otherwise disposing of the property. In *Trust Co. v. Ross,* the subject matter of the sale was the control-

ling interest in a hotel chain. The negotiations were completed, the contract of sale was executed, and the stock was placed in escrow before the death of the decedent. After his death, the estate made some financial arrangements and formally closed the sale. The Fifth Circuit concluded that the execution of the contract created a right to the proceeds (and thus constituted income in respect of a decedent) because the tasks left to the executor were "minor." 392 F.2d at 697. *Accord, Estate of Sidles, supra,* 65 T.C. at 880–81 (on date of death decedent had performed enough substantive acts within his control to "perfect" his right to receive liquidating distribution of corporate assets, declaration of liquidating dividend and filing of articles of dissolution characterized as "mere formalities" and "ministerial acts").

of a decedent can be a fortuitous event tax-wise, it is certainly hard to visualize death as a tax avoidance scheme." Note, *Sales Transactions and Income in Respect of a Decedent, supra,* 3 Ga.L.Rev. at 615. After all, the decedent in a sales case does not prearrange his death in order to shift the responsibility for delivering the subject matter of the sale transaction to his executor or to take advantage of the fair market value basis rule of § 1014(a) and thus avoid the reach of § 691.

Accordingly, the decision of the Tax Court is affirmed.