**Marilyn MINTER; Gay Swenson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 92–3745.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided March 23, 1994.

---

C. Nicholas Vogel, Fargo, ND, argued, for appellants.

William J. Patton, Washington, D.C., argued (Gary R. Allen, Richard Farber and Patricia M. Bowman, on the brief), for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

Marilyn Minter and Gay Swenson (the sisters) appeal the district court's summary judgment order denying them a refund of estate tax assessed under 26 U.S.C. § 2032A(c)(1)(B) (1988). We reverse.

The sisters and their brother, Robert Fisher, are the children of Julia and Victor Fisher. In 1947 Julia and Victor Fisher formed a family farming corporation and, because state law prohibited transfer of farmland to the corporation, Mrs. Fisher annually leased her farmland to the corporation for fixed cash payments. Mrs. Fisher continued this leasing arrangement until her death in 1978. At the time of her death, Mrs. Fisher owned seven percent of the corporation's stock, Victor Fisher owned ten and one-half percent, and Robert Fisher owned the rest. Under the terms of Mrs. Fisher's will, her farmland and her stock were placed in a trust for the benefit of her husband and children. We are told Victor Fisher waived his right to receive the trust's income during his lifetime.

Mrs. Fisher's estate elected special use valuation for her farmland under § 2032A. According to the Government, "there is no dispute that at the time of [Mrs. Fisher's] death [her farmland] met the requirements for the special valuation." *See* 26 U.S.C. § 2032A(b)(1), (b)(2)(A); *Brockman v. Commissioner,* 903 F.2d 518, 521 (7th Cir.1990) (listing statutory requirements). Because Mrs. Fisher devoted her land to "use as a farm for farming purposes" (qualified use) under § 2032A(b)(2)(A), her estate was permitted to reduce estate taxes by valuing the farmland based on the land's agricultural use instead of the land's highest and best use under the fair market method of valuation. *See Mangels v. United States,* 828 F.2d 1324,

1326 (8th Cir.1987) (valuation meant to encourage the continuation of family farms). To prevent the special valuation from being a windfall for children like Mrs. Fisher's, however, § 2032A imposes an additional estate tax (recapture tax) unless the children continue to use the farmland for the qualified use for ten years after the farm owner's death. 26 U.S.C. § 2032A(c)(1)(B), (c)(6)(A); *see Williamson v. Commissioner*, 974 F.2d 1525, 1527–28, 1531 (9th Cir.1992).

Following the estate's transfer of the farmland and the corporation's stock, the trustee of Mrs. Fisher's trust continued annually to lease the farmland to the family's corporation for fixed cash payments. After Victor Fisher died in 1982, his stock in the corporation was also placed in a trust and the children were the only beneficiaries of both trusts. The Government recognizes that for the purposes of § 2032A the children are treated as beneficial owners of the trust assets and, thus, the sisters each own a one-third interest in their mother's farmland and nearly six percent of the corporation's stock while their brother owns a one-third interest in the farmland and the rest of the stock.

In 1988 the Commissioner of Internal Revenue assessed a recapture tax against the sisters. Although the Commissioner's assessment was diametrically opposed to the position taken by the Commissioner under identical circumstances in the estate of the sisters' mother, the Commissioner contended the trustee's leases of the sisters' beneficial interests in the farmland to the corporation for fixed cash payments did not satisfy the sisters' obligation under § 2032A(c)(1)(B) to use the farmland for the qualified use during the recapture period. *See Williamson*, 974 F.2d at 1531. The sisters paid the additional tax and filed refund claims. After the Commissioner took no action on their claims, the sisters brought this lawsuit challenging the Commissioner's assessment.

■ The district court granted summary judgment for the Government because the sisters were not using the land for the qualified use approved in the estate. *See* 26 U.S.C. § 2032A(c)(1)(B), (b)(2)(A). Finding little significance in the sisters' part ownership of the family's farming corporation, the necessity of the leases to put the farmland in the hands of the corporation, and the risk that the sisters would not receive their rent income if the corporation experienced poor production or low prices, the district court concluded the sisters were essentially landlords receiving the equivalent of passive rent payments who must forfeit the special benefits of § 2032A. *See Williamson*, 974 F.2d at 1531; *Brockman*, 903 F.2d at 521. Having reviewed the district court's decision de novo, we conclude the trustee's leases satisfied the sisters' obligation during the recapture period to use the farmland "as a farm for farming purposes" under § 2032A(b)(2)(A). Thus, the sisters are entitled to retain the benefits of the special use valuation allowed in their mother's estate.

■ Significantly, the Government concedes that Mrs. Fisher's leasing arrangement with the family's farming corporation qualified her estate to elect the special valuation for her farmland. To meet the requirements for the special valuation, Mrs. Fisher must have been using her land for a qualified use at the time of her death. *See* 26 U.S.C. § 2032A(b)(1), (b)(2)(A). To justify the Commissioner's inconsistent treatment of Mrs. Fisher and the sisters, the Government relies on retroactive amendments to § 2032A that would have allowed Mrs. Fisher, and later Victor Fisher as her surviving spouse, to lease her farmland to a family member for fixed cash payments without disturbing the estate's special value election. *See* 26 U.S.C. § 2032A(b)(1), (b)(5). The Government's reliance is clearly misplaced. The retroactive amendments do not apply here because Mrs. Fisher never leased her farmland (nor did her husband after her death) to any family member. Instead, Mrs. Fisher always leased her farmland for fixed cash payments to the family's farming corporation in which she owned stock. To allow the special use valuation in Mrs. Fisher's estate, the Commissioner necessarily concluded that Mrs. Fisher was using her land under the leasing arrangement "as a farm for farming purposes." 26 U.S.C. § 2032A(b)(2)(A). Indeed, under the Commissioner's regulations, farmland leased by a decedent to a farming corporation owned and operated by the decedent and

fewer than fifteen family members is eligible for special use valuation. *See* Treas.Reg. § 20.2032A–3(b)(1).

The Government contends, however, that the regulation did not permit the trustee to continue leasing the farmland to the corporation under identical arrangements approved in Mrs. Fisher's estate without forfeiting § 2032A's benefits because the regulation is limited by its express language to deciding whether a decedent was using farmland for a qualified use. Although this regulation was written in terms of a decedent's predeath leasing activity, we agree with the Seventh Circuit that the regulation settles the broader question of whether farmland is being used for a qualified use under § 2032A(b)(2)(A). *See Martin v. Commissioner,* 783 F.2d 81, 84 (7th Cir.1986). Thus, the regulation offers no reasoned distinction between Mrs. Fisher's predeath leasing activity and the sisters' trustee's leasing activity after Mrs. Fisher's death.

■■■ Like the Commissioner, the Government contends the sisters were not using the farmland for the qualified use after their mother's death because their trustee's leases were for fixed cash payments. We believe the Government's focus on the payment method alone is misplaced. Although the receipt of fixed cash rent by a decedent's children may signal a passive investment, the children may nevertheless use farmland for the qualified use when their rent income is substantially dependent on production. *See Schuneman v. United States,* 783 F.2d 694, 698–700 (7th Cir.1986) (cash leases adjustable for production between decedent and non-family member); *see also Williamson,* 974 F.2d at 1533–34 (cash lease between decedent's son and son's nephew); *Brockman,* 903 F.2d at 521–22 (cash lease between decedent and unrelated farmer-neighbor); *Heffley v. Commissioner,* 884 F.2d 279, 284–85 (7th Cir.1989) (cash lease between decedent's lifetime trustee and relatives outside family circle); *Martin,* 783 F.2d at 84 (cash lease between decedent's heirs and unrelated agribusiness). *Williamson, Brockman, Heffley,* and *Martin* make clear that when a decedent's children enter into a fixed cash rent arrangement with another farmer who as-

sumes the financial risks of farming, the children's rent income is not linked to the contingencies of production and the children are mere landlords collecting a fixed rent. Because this kind of an arrangement takes the children out of the family farming business, it also puts them outside the scope of § 2032A. On the other hand, these cases and *Schuneman* teach that when a decedent's children enter into a leasing arrangement in which their rent income is substantially dependent on production, the children have accepted the financial risks of family farming and thus retain § 2032A's benefits.

When we apply the test of substantial dependence on production to the undisputed facts in this case, we conclude the trustee's leases of the farmland to the family's farming corporation continued the use that qualified Mrs. Fisher's estate for preferential treatment when the estate tax return was filed. As the owners of the farmland and the family farming corporation, the sisters and their brother necessarily retained the financial risks of farming when their farmland was farmed by their corporation. The sisters' rent income, like their mother's rent income before them, depended on the farmland's productivity and the variable risks of weather, disease, and fluctuating prices. Unlike landowners entering into leases with another farmer who takes on the risks and agrees to pay fixed rent whether the farming operation is profitable or not, the sisters assumed substantially the same risks under the trustee's leases as they would have incurred by farming the land themselves. If the corporation's farming operation flourished, the sisters received their rent income; otherwise not. Indeed, the undisputed facts refute the Government's argument that the leases insulated the sisters from the risks of farming. During the period covered by the trustee's leases, the sisters each lost over $25,000 from the corporation's farming activities.

■ Finally, the Government contends the sisters' minority shareholdings in their corporation were so minimal that "it [can] hardly be said [the sisters] have, in essence, leased the farm to themselves." We disagree. Treasury Regulation § 20.2032A–3(b)(1) makes clear that special use eligibility

is conditioned on the number of family shareholders, rather than a minimum ownership percentage, and the sisters' corporation satisfies the regulation's requirements. We also see no significant difference between each sister's nearly six percent interest in the family's farming corporation and Mrs. Fisher's seven percent interest when her estate qualified for the special valuation.

We thus reverse the district court and remand with instructions to enter judgment for the sisters.