**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3462

_____

Estate of Verdon Gavin,        *
                           *
        Appellant,      *
                           *  Appeal from the United States
     v.                  *  District Court for the
                           *  Northern District of Iowa.
United States of America,    *
                           *
        Appellee.       *

_____

Submitted:  March 13, 1997

Filed:  May 8, 1997

_____

Before MAGILL and MURPHY, Circuit Judges, and GOLDBERG,[1] Judge.

_____

MAGILL, Circuit Judge.

The Estate of Verdon Gavin (the Gavin estate) brought this tax refund suit against the government, alleging that the Gavin estate is entitled to (1) value certain farmland under the special use valuation provisions of Internal Revenue Code (I.R.C.) § 2032A (1988 & Supp. II 1990) and (2) use a stepped-up basis under I.R.C. § 1014 (1988 & Supp. II 1990) to calculate taxable income from the sale of grain and livestock.  The district court granted summary judgment to the government on both claims.  We affirm in part and reverse in part.

_____

[1]THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

The facts of this case are not in dispute.  Verdon Gavin was a farmer who owned two parcels of farmland (Parcel One and Parcel Two) in Jones County, Iowa.  Parcel One was approximately 200 acres, and Parcel Two was approximately 275 acres.  During Verdon's active farming years, he farmed the land with his son, Gary Gavin.

In 1978, Verdon entered into a crop share agreement with Gary for Parcels One and Two.  According to the terms of this agreement, Gary Gavin was to pay his father "one-half (½) the proceeds from all sales of livestock and crops" as well as "[o]ne-half (½) the proceeds obtained through participation in government programs designed for crop production or price control[.]"  Farm Lease (May 17, 1978) at ¶ 2, reprinted in Appellant's App. at 51.  Since entering into the agreement and during all times relevant to this appeal, Gary Gavin has actively farmed both Parcels One and Two.

Shortly after entering into the 1978 crop share agreement, Verdon Gavin retired from active farming, leaving Gary to run the family farm.  On his federal income tax returns filed thereafter, Verdon Gavin reported as ordinary income the crop and livestock sale proceeds that he received from Gary.

On January 4, 1990, Verdon and Gary Gavin signed a new lease for each of the parcels.  With respect to Parcel One, Gary agreed "to pay as rent . . . the sum of $10,000.00 for the year commencing March 1, 1990, and ending March 1, 1991, or to crop share said property on a 50/50 basis."  Lease with Option to Purchase Parcel One (Jan. 4, 1990) at ¶ 1, reprinted in Appellant's App. at 53.  As the government concedes, it is undisputed that, under this

provision, Gary "had the option to rent the land for a 50 percent share of the crops or $10,000 per year . . . ." Appellee's Br. at 2. Under the new arrangement, Gary also had the option to purchase Parcel One for $800 per acre. See Lease with Option to Purchase Parcel One at ¶ 3(a), reprinted in Appellant's App. at 53. With respect to Parcel Two, Gary agreed to pay his father a fixed cash rent of $10,000 for the one-year period from March 1, 1990, to March 1, 1991, and then $15,000 per year for each year thereafter. See Lease with Option to Purchase Parcel Two (Jan. 4, 1990) at ¶ 1, reprinted in Appellant's App. at 56. Under the new arrangement, Gary also had the option to purchase Parcel Two for $1000 per acre. Id. at ¶ 3(a), reprinted in Appellant's App. at 56.

On January 17, 1990, less than two weeks after signing the new leases, Verdon Gavin died testate. He left Parcels One and Two to his children and grandchildren. Under the will, Gary Gavin received a 1/7 interest in each of the parcels of farm land. Verdon's will also granted Gary the option to buy Parcels One and Two from the Gavin estate for $1000 per acre and provided that, if Gary exercised the option, he would have one year to obtain financing for the purchase. See Last Will and Testament of Verdon Gavin (Oct. 23, 1987) at § III, reprinted in Appellant's App. at 60.[2]

Between Verdon's death and February 28, 1990, Gary paid crop share to the Gavin estate in the amount of 50% of the cash proceeds from all livestock and crop sales. On March 1, 1990, Gary began

---

[2]Because the issue is not relevant to this appeal, we do not decide whether Gary Gavin had the option to purchase Parcel One for $800 per acre as specified under the lease or $1000 per acre as specified under the will. For purposes of this appeal, it is only important that Gary had the option to purchase Parcel One.

paying cash rent to the Gavin estate in the amount of $10,000 per year for Parcel One and $10,000 per year for Parcel Two.

On December 12, 1990, Gary signed a notice of intent to exercise his option to purchase Parcel Two. On October 1, 1991, less than two years after Verdon's death, Gary bought Parcel Two. On February 4, 1992, just over two years after Verdon's death, Gary signed a notice of his intent to exercise his option to purchase Parcel One. Gary continued to pay cash rent to the Gavin estate until February 29, 1992. On March 2, 1992, Gary made a down payment on Parcel One.

The executor of the Gavin estate filed a timely 1990 federal estate tax return on which the executor elected to value Parcels One and Two under the special use valuation provisions of I.R.C. § 2032A. The Internal Revenue Service (IRS) accepted the special use valuation of Parcel Two, but denied the special use valuation of Parcel One. The IRS consequently assessed an additional tax of $11,040 against the Gavin estate.

In addition to the 1990 estate tax return, the executor also filed a timely 1990 federal income tax return for the Gavin estate. On this form, the executor claimed, pursuant to I.R.C. § 1014(a), a stepped-up basis in the amount of $94,296 for the grain and livestock received by the Gavin estate as rental payment from Gary Gavin. Consistent with this claim to a stepped-up basis, the executor reported a gain of only $7990 from the sale of the grain and livestock.

The IRS rejected the Gavin estate's claim to a stepped-up basis. The IRS determined that the Gavin estate was not entitled to a stepped-up basis because the crop and livestock sale proceeds constituted income in respect of a decedent pursuant to I.R.C.

§ 691 (1988) and § 1014(c).  The IRS instead required the Gavin estate to use Verdon Gavin's basis in the grain and livestock to calculate the taxable income from the sale proceeds.  As a result, based on Verdon's lower cost basis, the IRS assessed an additional tax of $23,432 against the estate from the sale of the grain and livestock.

After paying the asserted deficiencies, the Gavin estate filed claims for refunds with the IRS.  The IRS denied the Gavin estate's claims for refunds.  After exhausting all administrative remedies, the Gavin estate filed suit in the district court.

The Gavin estate and the government each moved for partial summary judgment on the special use valuation claim, and then each party later moved for summary judgment on the stepped-up basis claim.  The district court granted summary judgment to the government on both claims.  The Gavin estate appeals.

## II.

The Gavin estate argues that it is entitled to value Parcel One under the special use valuation provisions of I.R.C. § 2032A and that the IRS therefore incorrectly assessed an additional tax of $11,040.  We agree.

On appeal, we review the district court's grant of summary judgment to the government de novo.  See McCormack v. Citibank, N.A., 100 F.3d 532, 537 (8th Cir. 1996).  Summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Id.; see also Fed. R. Civ. P. 56(c).

Federal estate taxes are "generally based on the fair market value of the taxable property transferred, valued at its highest and best use." LeFever v. Commissioner, 100 F.3d 778, 782 (10th Cir. 1996). Section 2032A, however, provides an exception to this general rule. If the requirements of § 2032A are met, real property acquired from a decedent is valued at its actual use, rather than at its highest and best use. See I.R.C. § 2032A(a)(1). Valuing real property at its actual use will often substantially reduce an estate's tax burden.

Congress intended that § 2032A would "protect the heirs of family farms and small family businesses from being forced to sell the farms or businesses to pay federal estate taxes." LeFever, 100 F.3d at 782. As explained in the 1976 House Report that accompanied the enactment of § 2032A, Congress feared that:

> In some cases, the greater estate tax burden [from highest and best use valuation] makes continuation of farming . . . not feasible because the income potential from these activities is insufficient to service extended tax payments or loans obtained to pay the tax. Thus, the heirs may be forced to sell the land for development purposes. Also, where the valuation of land reflects speculation to such a degree that the price of the land does not bear a reasonable relationship to its earning capacity . . . it [is] unreasonable to require that this "speculative value" be included in an estate with respect to land devoted to farming . . . .

H.R. Rep. No. 94-1380, at 22 (1976), reprinted in 1976 U.S.C.C.A.N. 3356, 3376. In short, Congress intended to provide a measure of federal estate tax relief to the heirs of small family farmers so that, when their parents died, the heirs would not have to sell the family farm.

At the same time, however, Congress included § 2032A(c) "to foreclose abuse of the privilege by taxpayers who would engage in

- 6 -

family farming only long enough to reap the estate tax benefits and then would convert the property to a more lucrative commercial use." Williamson v. Commissioner, 974 F.2d 1525, 1527 (9th Cir. 1992). Specifically, as relevant here, § 2032A(c)(1) provides that "[i]f, within 10 years after the decedent's death and before the death of the qualified heir . . . (B) the qualified heir ceases to use for the qualified use the qualified real property . . . then, there is hereby imposed an additional estate tax." I.R.C. § 2032A(c)(1).

The parties agree that Gary Gavin as well as the several children and grandchildren who inherited the proceeds of the Gavin estate were each "qualified heirs," see I.R.C. § 2032A(e) (defining "qualified heir"), and that Parcel One was a "qualified real property," see I.R.C. § 2032A(b) (defining "qualified real property"). Moreover, the government concedes that Gary's 1/7 interest in Parcel One never became subject to the additional tax imposed by § 2032A(c)(1) and that, until February 28, 1990, when Gary stopped paying crop share and began to pay cash rent for Parcel One, Parcel One was put to a qualified use with respect to all the qualified heirs.

The government, however, argues that the heirs, other than Gary, "cease[d] to use for the qualified use the qualified real property," I.R.C. § 2032A(c)(1)(B), on March 1, 1991, when Gary stopped paying crop share and began paying cash rent to the Gavin estate. According to the government, once Gary started making cash rent payments, the heirs, with the exception of Gary, were no longer subject to the financial risks of farming as required by § 2032A, and consequently "cease[d] to use for the qualified use the qualified real property . . . ." Id.

In <u>Minter v. United States</u>, 19 F.3d 426 (8th Cir. 1994), this Court recognized that the receipt of cash rent from a farming operation is ordinarily not a qualified use for purposes of § 2032A(c)(1). <u>Minter</u>, 19 F.3d at 429. Nevertheless, we made clear in <u>Minter</u> that a qualified heir who receives rental income does not automatically lose the benefits of special use valuation. We explained that:

> [W]hen a decedent's children enter into a fixed cash rent arrangement with another farmer who assumes the financial risks of farming, the children's rent income is not linked to the contingencies of production and the children are mere landlords collecting a fixed rent. Because this kind of arrangement takes the children out of the family farming business, it also puts them outside the scope of § 2032A. On the other hand, . . . when a decedent's children enter into a leasing arrangement in which their rent income is substantially dependent on production, the children have accepted the financial risks of family farming and thus retain § 2032A's benefits.

<u>Id.</u>; <u>see also</u> <u>Schuneman v. United States</u>, 783 F.2d 694, 698 (7th Cir. 1986) ("[T]he qualified use requirement of § 2032A(b)(1) is satisfied if the income from rental of the property is substantially dependent upon production."). Thus, to determine if the heirs ceased using Parcel One for a qualified use under § 2032A(c)(1)(B), we must determine if the receipt of cash rent took Verdon Gavin's children "out of the family farming business" and made them into "mere landlords collecting a fixed rent." <u>Minter</u>, 19 F.3d at 429.

In the present action, the qualified heirs did not enter a cash rent arrangement with just "another farmer." <u>Id.</u> Instead, they leased Parcel One to Gary, the qualified heir whom Verdon Gavin had groomed for many years to take over the family farm. Although not dispositive, we conclude that the identity of the

farmer is relevant to determining whether a decedent's heirs were "mere landlords collecting a fixed rent," id., or qualified heirs engaging in a qualified use.  The weight of case law and legislative history interpreting § 2032A lends support to this distinction.  Cf. LeFever, 100 F.3d at 783 ("Cash rental of the property to a nonfamily member is not a qualifying use." (emphasis added)); Brockman v. Commissioner, 903 F.2d 518, 521 (7th Cir. 1990) ("The case law and the legislative history of Section 2032A both make clear that the qualified use requirement is not satisfied if a decedent's financial stake or other involvement in land is merely that of a landlord who collects a fixed rent from an unrelated tenant." (emphasis added)); H.R. Rep. No. 94-1380 (1976), at 23, reprinted in 1976 U.S.C.C.A.N. at 3377 ("The mere passive rental of property will not qualify.  However, where a related party leases the property and conducts farming or other business activities on the property, the real property may qualify for special use valuation.  For example, if A, the decedent, owned real property which he leased for use as a farm to the ABC partnership in which he and his sons B and C each had a one-third interest in profits and capital, the real property could qualify for special use valuation." (emphasis added)); but see Williamson, 974 F.2d at 1531 ("The legislative history accompanying section 2032A and its amendments reconfirms the statute's plain language insisting that Williamson as the qualified heir must personally use the property in its qualified use.  Cash rental to a relative will not suffice.").

In addition to keeping the family farm within the family, Verdon's heirs "accepted the financial risks of family farming."  Minter, 19 F.3d at 429.  During the one-year period from March 1, 1990, to March 1, 1991, Gary had the option, under the lease then in effect, "to pay as rent for [Parcel One] the sum of $10,000 . . . or to crop share [Parcel One] on a 50/50 basis."  Lease With

Option to Purchase Parcel One at ¶ 1 (emphasis added), <u>reprinted in</u> Appellant's App. at 53.  Because it was Gary's choice, by simply choosing to pay cash rent in the amount of $10,000, Gary did not reduce the financial risk faced by the other heirs.  Had Parcel One's crop or livestock sales suffered because of weather, disease, or fluctuating prices to such an extent that the value of 50% of the sale proceeds dropped to less than $10,000, Gary could and reasonably would have exercised his option to pay crop share rather than cash rent.  As a result, the other heirs shared the risk of farming because they were not guaranteed to receive $10,000 in cash rent.  Instead, depending on weather, disease, and fluctuating prices, they might have earned something less than $10,000, or nothing at all.

Indeed, Gary's option to pay cash rent decreased the return that the other heirs could expect.  The option to pay cash rent for Parcel One effectively capped the heirs' income from Parcel One at $10,000, without in any way reducing the downside potential faced by the heirs in the event that the crop and livestock sales suffered.  If a 50% crop share were worth more than $10,000, Gary could and reasonably would have paid $10,000 in cash rent, thereby preventing the heirs from participating in the upside potential of an extremely profitable year.  As a result, the terms of the lease forced the heirs to accept all the downside potential of bad years without enjoying the upside potential of good years--an arrangement inconsistent with the heirs being "mere landlords collecting a fixed rent." <u>Minter</u>, 19 F.3d at 429.

At the conclusion of the one-year period from March 1, 1990, to March 1, 1991, the lease provided that the rent on Parcel One "for the period of March 1, 1991, and each year thereafter shall be $10,000.00 or a crop share lease on a 50/50 basis at the election of Verdon Gavin."  Lease With Option to Purchase Parcel One at ¶ 1,

reprinted in Appellant's App. at 53. Accordingly, because the Gavin estate had the option to demand either a cash rent or a crop share, the heirs' rent income was still dependent on production. In profitable years, the heirs would likely request that Gavin pay them half of the sale proceeds whereas in difficult years the heirs would likely ask for $10,000 in rent. While this level of dependency on production is not in and of itself sufficient to have kept the heirs in the "family farming business," Minter, 19 F.3d at 429, it nevertheless indicates that the qualified heirs were more than "mere landlords collecting a fixed rent." Id.

The qualified heirs had an additional link to the financial fortunes of the family farm. According to the terms of Verdon Gavin's will, Gary had an outstanding option to buy Parcel One for $1000 per acre, which he did not exercise until February 4, 1992. Furthermore, Verdon Gavin's will provided that, if Gary exercised his option to purchase Parcel One, Gary had an additional year to obtain financing to carry out the purchase. As a result, prior to the expiration of Gary's option to buy and prior to the expiration of the one-year financing period, it would have been difficult for the Gavin estate to sell Parcel One or do anything with that parcel other than allow Gary to farm it. Consequently, the terms of Verdon Gavin's will locked the heirs into an arrangement that was dependent on Gary's decision to purchase the family farm. Gary's decision in turn was at least partially dependent on the revenue he could earn from farming. Again, while this factor is not in and of itself sufficient to have kept the heirs in the "family farming business," Minter, 19 F.3d at 429, it nonetheless indicates that the qualified heirs were more than "mere landlords . . . ." Id.

Considering the particular facts presented in this appeal, we conclude that the combination of the foregoing factors demonstrates that the interests held by the Gavin estate heirs were

- 11 -

substantially dependent on production such that the qualified heirs did not "cease[] to use for the qualified use the qualified real property . . . ." I.R.C. § 2032A(c)(1)(B). Section 2032A was designed to protect family farmers such as the Gavins. The heirs of the Gavin estate did not remove themselves from the family farming business and did not seek to abuse the benefits offered by § 2032A. Cf. Schuneman, 783 F.2d at 699-701 (holding that income was substantially dependent on production where the production history of the farmland in question indicated it was likely that a rent-adjustment clause in a lease could cause a 20 percent increase or decrease in taxpayer's income). Instead, they chose to allow Gary, the heir designated by Verdon Gavin to run the family farm, to continue his ongoing farming operations until he could eventually buy out the interests of the other heirs in Parcel One.

Once he bought out the other heirs, Gary Gavin became the sole qualified heir, and because he continued to actively farm Parcel One, Parcel One has been continuously put to a qualified use by a qualified heir. Thus, the qualified heirs of Verdon Gavin have never ceased to use Parcel One for the qualified use of farming, and consequently the Gavin estate has not run afoul of § 2032A(c)(1).[3]

## III.

The Gavin estate argues that, pursuant to I.R.C. § 1014(a), it was entitled to a stepped-up basis in the grain and livestock

---

[3]The government also argues that, because Gary Gavin purchased Parcel One more than two years after the death of his father, his purchase of Parcel One does not meet the requirements of § 2032A(c)(7)(A)(i), a provision that offers a safe harbor from the additional tax burden imposed by § 2032A(c)(1). Because we conclude that the qualified heirs did not cease using Parcel One for a qualified purpose and therefore that the additional tax should never have been imposed, we need not reach this issue.

received from Gary Gavin in satisfaction of Gary's crop share agreement with Verdon Gavin.  The Gavin estate argues that the crop share was not income in respect of a decedent under I.R.C. § 691 and that the Gavin estate was therefore entitled to a stepped-up basis under § 1014(a).  We disagree.

Section 1014(a) provides generally for a stepped-up basis for property transferred from a decedent.  However, under § 1014(c), a stepped-up basis is not to be applied to "property which constitutes a right to receive an item of income in respect of a decedent under section 691."  I.R.C. § 1014(c).[4]

Under I.R.C. § 61(a)(5), rent is income.  I.R.C. § 61(a)(5) (1988 & Supp. II 1990).  Regardless of whether rent is paid in cash or in crops and livestock, it is still income in respect of the person who, in exchange for the use of real property, receives the rent.  See Tatum v. Commissioner, 400 F.2d 242, 247 (5th Cir. 1968) ("Crop shares representing payment by the tenant for the use of the land are rental income assets no less than money paid for the same purpose.").  To determine whether income, such as rent, is income in respect of a decedent, "[t]he focus is upon the decedent's right

---

[4]Internal Revenue Code § 691, in relevant part, provides:

The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent . . . .

I.R.C. § 691(a)(1).

or entitlement to income at the time of death." <u>Estate of Peterson v. Commissioner</u>, 667 F.2d 675, 679 (8th Cir. 1981) (emphasis in original). Accordingly, income in respect of a decedent includes any income earned in satisfaction of a right that is fully vested at the time of the decedent's death such that the decedent had no obligations left to perform to earn that income, other than to wait to receive payment. <u>See</u> <u>id.</u> at 679-81.

Here, in exchange for leasing his property to Gary, Verdon had a right to receive one-half of the proceeds from all crop and livestock sales. <u>See</u> Farm Lease (May 17, 1978) at ¶ 2(a), <u>reprinted in</u> Appellant's App. at 51. Throughout his life, Verdon had reported these sale proceeds as ordinary income. At the time of his death, Verdon's right to the rent income had fully vested because, had he lived, Verdon would have only needed to wait to receive his income. Upon Verdon's death, his fully-vested right to receive the rent income from Gary passed to his estate. Thus, the rent received by the Gavin estate was income in respect of a decedent for purposes of §§ 691 and 1014(c).

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment denying the benefits of § 2032A to the Gavin estate with respect to Parcel One. We further direct the district court to enter an order requiring the government to accord special use valuation treatment to the Gavin estate with respect to Parcel One and issue a tax refund in the appropriate amount. Finally, we affirm the district court's grant of summary judgment to the government on the issue of whether the Gavin estate is entitled to a stepped-up basis under § 1014(a).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.