IN THE TAX COURT OF THE
STATE OF OREGON

The ESTATE OF RONALD J. KLUPENGER,
Brian P. Klupenger, Personal Representative

*v.*

DEPARTMENT OF REVENUE

(TC 4079)

Robert K. Winger and Andrew S. Craig, Dunn, Carney, Allen, Higgins & Tongue, Portland, represented Plaintiff (taxpayer).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Plaintiff rendered March 25, 1998.

**CARL N. BYERS, Judge.**

Plaintiff appeals from an assessment of income taxes for 1991 and 1992. Defendant (department) found that proceeds from the sale of certain shares of a corporation constituted income in respect of a decedent, giving rise to additional income taxes. Plaintiff contends that the sale was not sufficiently consummated prior to the decedent's death and therefore was not income in respect of a decedent. The parties have stipulated the facts and submitted the matter to the court for decision on cross motions for summary judgment.

## FACTS

Ronald J. Klupenger (decedent) was one of three shareholders who owned Klupenger Nursery and Greenhouses, Inc., a closely held corporation. Decedent owned 180 shares, or 30 percent of the outstanding shares. On February 28, 1987, decedent entered into a Property Settlement Agreement as part of a divorce proceeding. The agreement acknowledges that decedent's wife Sharon Klupenger (Sharon) was entitled to one-half of decedent's stock. However, the parties agreed that Sharon would not become a shareholder of the corporation. Instead, decedent would pay Sharon an amount equal to one-half the value of his stock. Sharon would receive her payments when decedent received his payments from the stock, whether received as dividends or as proceeds from the sale or redemption of the stock. In order to secure that portion of the Property Settlement Agreement, decedent pledged the stock to Sharon.

On July 1, 1990, decedent resigned as an officer and director of the corporation and entered into both a Stock Redemption Agreement and a Noncompetition Agreement with it. Under the Noncompetition Agreement, the corporation promised to pay decedent $683,000, with $21,000 payable in various forms at closing and the balance of $662,000 paid in monthly installments of $2,758 commencing August 1. The Stock Redemption Agreement provided that the corporation would pay decedent the sum of $544,860 for his 180 shares of the corporation's common stock, payable in installments of $5,000 per month beginning July 1, 1992. Interest did not begin to accrue on the unpaid balance until the date of

closing or the date the seller's endorsed stock certificates were delivered to the corporation, whichever was later.

On May 3, 1991, Sharon sued decedent individually, the remaining shareholders, and the corporation. Sharon claimed that decedent breached the Property Settlement Agreement by manipulating the stock redemption price, asserting that the payments under the Noncompetition Agreement were actually for stock. Apparently, decedent had not disclosed or shared the noncompetition payments with Sharon. Sharon also alleged that the shareholders had acted in concert with decedent to avoid paying Sharon her rightful share.

Decedent died on September 5, 1991, while the lawsuit by Sharon was still pending.

## ISSUE

The parties stipulated that "[t]he issue in this case is whether the Estate of Ronald J. Klupenger received income in respect of a decedent when it received the proceeds from the Stock Redemption Agreement."

## ANALYSIS

■  IRC section 1.691(a)-(1)(b) provides, in part:

"In general, the term 'income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent."

■■  Because of the wide variety of circumstances which may surround transactions as of the date of an individual's death, it is sometimes difficult to determine whether proceeds from the sale of an asset constitute income in respect of a decedent. In *Estate of Peterson v. Commissioner*, 74 TC 630, 639-41 (1980), *aff'd* 667 F2d 675 (8th Cir 1981) the court set forth four requirements in order for sale proceeds to constitute income in respect of a decedent. Those four conditions are accurately summarized by plaintiff as follows:

"1. The decedent entered into a legally significant arrangement such as a contract disposing of the subject matter of the sale.

"2. The decedent performed the substantive (non-ministerial) acts required as preconditions of the sale.

"3. No economically material contingencies existed at the time of the decedent's death, which might have disrupted the sale.

"4. The decedent would himself have eventually received the sale proceeds had he lived."

Plaintiff contends that because decedent pledged the stock to Sharon as security under the Property Settlement Agreement, decedent had to obtain a release from Sharon in order to perform under the Stock Redemption Agreement. Plaintiff believes that was a substantive as opposed to a ministerial condition.

Although decedent represented in the Stock Redemption Agreement that his shares were "free and clear of all encumbrances," both he and the corporation knew this was not true. The corporation had authorized the Stock Pledge Agreement encumbering the shares to Sharon and the Stock Redemption Agreement acknowledges that Sharon "currently has possession" of the stock. The fact that decedent agreed to indemnify the corporation from any claims by Sharon lends credence to her claim that decedent's negotiation of a Noncompetition Agreement constituted a breach of their Property Settlement Agreement. At the least, Sharon had a colorable claim for breach of the Property Settlement Agreement. If that claim were sustained, then she had the right to sell the stock under the Stock Pledge Agreement. The court finds that as of decedent's date of death, September 5, 1991, decedent was not just faced with ministerial duties, but also an "economically material contingenc[y] which could [have] * * * disrupt[ed] the sale." *Estate of Peterson*, 74 TC at 643.

The Stock Redemption Agreement contemplates that the seller will surrender the shares held in his name and

the corporation would reissue new certificates in the corporate name. The certificates in the corporate name would be held in escrow pending payment of the full purchase price.

It may be that closing of the Stock Redemption Agreement was postponed for two years in order to allow decedent the time to either satisfy the Property Settlement Agreement or renegotiate its terms. However, as of the date of decedent's death, he was ostensibly in breach of both the Stock Redemption Agreement and the Property Settlement Agreement. If Sharon prevailed on her claims and she exercised her right to sell the stock, then decedent would not have received any proceeds under the Stock Redemption Agreement. Accordingly, the proceeds, which were eventually received after the decedent's death and after a Settlement Agreement had been negotiated with Sharon, did not constitute income in respect of a decedent. Now therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is denied.